**William F. RHODES, Jr. and Carrie E. Rhodes, Appellants**

**v.**

**USAA CASUALTY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Nov. 15, 2010.

Filed May 17, 2011.

---

Richard M. Serbin, Altoona, for appellants.

Patricia A. Monahan, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., BENDER and FREEDBERG, JJ.

OPINION BY FORD ELLIOTT, P.J.:

William F. Rhodes, Jr. and Carrie E. Rhodes ("the Rhodeses") appeal from the order of August 31, 2009, granting, in part, appellee USAA Casualty Insurance Company's ("USAA") motion to compel. We reverse.

The relevant facts and procedural history underlying this appeal are, in abbreviated form, as follows. On July 1, 2000, while Mr. Rhodes was driving his brother's motorcycle, he was involved in an accident, from which he suffered numerous injuries sufficiently serious as to require hospitalization in an intensive care unit for several days. The Rhodeses filed a claim with State Farm Insurance Company, which was the insurer of the tortfeasor, i.e., the driver of the vehicle that collided with Mr. Rhodes's motorcycle. State Farm paid $50,000, which was the liability limit of the tortfeasor's policy, to the Rhodeses. Subsequently, on August 20, 2001, the Rhodeses contacted USAA, their insurer,[Footnote 1] and Progressive Insurance Company, the insurer of the motorcycle, with notice of an underinsured motorist claim. Progressive tendered payment of $15,000 to the Rhodeses on October 12, 2001.

On May 10, 2002, the Rhodeses submitted to USAA their statement of demand settlement package, which included medical records and other documentation as to Mr. Rhodes's injuries and damages. The Rhodeses placed a total value on their claim of $235,000, and offered to settle for $175,000. On July 10, 2002, Linda Barboza, the USAA claims examiner for large loss claims assigned to the Rhodeses' claim, offered to settle for $5,000.[Footnote 2] USAA contended that there was a question as to causation for one of Mr. Rhodes's injuries, specifically a neck injury. The Rhodeses rejected the offer as "ridiculous" and "not made in good faith" and requested arbitration. (*See* Complaint, item 23).

At this point, Alma Trevino, a USAA senior litigation manager for the northeast region, and Joel Kormanski, outside counsel, took over the Rhodeses' claim. After reviewing the Rhodeses' file and in light of the $65,000 already paid by other insurance carriers on the claim, Ms. Trevino determined that Ms. Barboza's $5,000 settlement offer was fair. However, when Mr. Kormanski initially reviewed the case, he determined that the Rhodeses' claim was worth more than $5,000, but less than the Rhodeses' $200,000 policy limit. Mr. Kormanski informed Ms. Trevino of his determination via letter dated August 6, 2002. Slightly more than a month later, on September 15, 2002, Mr. Kormanski informed Ms. Trevino that it would probably require $50,000 to $65,000, or more, to resolve the Rhodeses' case. Mr. Kormanski sought an independent medical examination of Mr. Rhodes, particularly with regard to the disputed neck injury. Dr. Kelly Agnew, an orthopedic physician, conducted the examination on November 14, 2002, immediately following which Dr. Agnew wrote a report favorable to USAA's position as to causation of Mr. Rhodes's neck injury. Mr. Rhodes underwent a surgical procedure related to his neck injury in January 2003.

By letter dated July 1, 2003, USAA increased its settlement offer to $50,000, which the Rhodeses rejected. USAA then made several other offers, of $65,000; of $80,000; and on November 21, 2003, a "bottom line" offer of $100,000, all of which were rejected. (*See* Letter from Mr. Kormanski to Attorney Serbin, the Rhodeses' counsel, dated November 21, 2003). On December 4, 2003, the Rhodeses renewed their settlement demand of $175,000, and stated that if the offer were not accepted by December 29, 2003, it would be withdrawn and the parties would proceed to arbitration. USAA agreed to settle the claim for $175,000 on December 22, 2003. After rejecting two drafts of a settlement/release agreement, the Rhodeses accepted and signed the final agreement on January 12, 2004.

On July 15, 2004, the Rhodeses filed suit against USAA for breach of its contractual duty to act in good faith in the handling of their underinsured motorist claims and sought compensatory and punitive damages in accordance with 42 Pa.C.S.A. § 8371 and Pennsylvania common law. (Complaint at 12, 16). After nearly two years of discovery, on July 13, 2006, the Rhodes[es] filed a motion for partial summary judgment; and on August 17, 2006, USAA filed its own motion for summary judgment. Oral argument on the cross motions was held on September 15, 2006, after which the trial court denied the Rhodeses' motion for partial summary judgment, but granted USAA's motion for summary judgment and dismissed the Rhodeses' complaint with prejudice. The Rhodes-

es filed a timely appeal, and USAA cross-appealed.

[Footnote 1] The Rhodeses had two policies with USAA, each with $100,000 of underinsured motorist coverage, which were stackable.

[Footnote 2] There was no dispute as to the liability of USAA to the Rhodeses.

*Rhoades v. USAA Casualty Insurance Company*, Nos. 156 & 266 WDA 2007, unpublished memorandum at 2–4, 951 A.2d 1225 (Pa.Super. filed January 31, 2008), *appeal denied*, 598 Pa. 775, 958 A.2d 1048 (2008).

On appeal, this court reversed the trial court's grant of summary judgment in favor of USAA. We found that the Rhodeses raised a question of material fact to be resolved by the fact-finder at trial. Specifically, there was a question of material fact as to whether USAA had a reasonable basis for its failure to increase its original settlement offer more promptly, and whether USAA knowingly or recklessly disregarded a lack of reasonable basis for its actions. (*Id.* at 19.) We affirmed the trial court's order denying the Rhodeses' motion for partial summary judgment. We also quashed USAA's cross-appeal, as it was not aggrieved by the trial court's order.[1]

Prior to the above appeal, on October 11, 2006, the trial court granted in part USAA's Motion to Compel Plaintiffs' Response to Defendant's First Set of Interrogatories and Request for Production of Documents. In its order, the trial court directed that the Rhodeses provide USAA with the entire content of their attorney's file on the underlying UIM claim, excluding any information protected by the attorney-client privilege. The trial court reasoned that Attorney Serbin's file was discoverable because whether the Rhodeses acted in good faith in the underlying UIM claim was relevant to whether USAA's conduct constituted bad faith. (Order, 10/11/06 at 9.) USAA claimed that it needed the information to evaluate whether its insureds, the Rhodeses, acted in good faith, and the trial court agreed with this rationale:

> In the context of a bad faith insurance claim, the conduct of the plaintiffs and the possibility that their actions constituted bad faith is relevant because the possibility exists that the defendant acted in reliance on information provided to it by the plaintiffs that was inaccurate as a result of bad faith on the plaintiffs' part.

*Id.* at 10.[2]

On November 8, 2006, the trial court granted reconsideration and vacated its October 11, 2006 order pending review. However, before argument could take place on the Rhodeses' reconsideration motion, summary judgment was granted in favor of USAA. As described above, on January 31, 2008, this court reversed and remanded for further proceedings.

On remand, the Honorable Charles C. Brown, Jr., Senior Judge, was assigned to preside over the matter. On August 31, 2009, Judge Brown reinstated the October 11, 2006 order granting USAA's motion to compel. This timely appeal followed. On February 2, 2010, Judge Brown filed a Rule 1925(a) opinion, relying on the Hon-

---

1. USAA argued that the trial court had erred in criticizing the conduct of Ms. Barboza with regard to her handling of the Rhodeses' claim. However, USAA was the prevailing party in the order under appeal and could not appeal from an order entered in its favor. (*Id.* at 29–30.)

2. The trial court denied USAA's motion insofar as it also sought Attorney Serbin's file with respect to the Rhodeses' third-party claim against the tortfeasor, Greta Kies. (*Id.* at 12.) The trial court found that plaintiffs' counsel's handling of their claim against the original tortfeasor was not relevant to the subject matter involved in this action. (*Id.*)

orable Elizabeth A. Doyle's October 11, 2006 opinion and order.

The Rhodeses have raised the following issues for this court's review on appeal:

1. Did the trial court commit an error of law when it directed the insureds to produce the work product of their attorneys, non-parties over whom they have no control?

2. Did the trial court abuse its discretion by ordering the insureds to produce their attorney's entire work product, without identifying, performing a relevancy analysis, or examining any of counsel's protected records under Pa.R.C.P. 4003.3?

Rhodeses' brief at 5.

Before we proceed, we must first determine whether the trial court's discovery order is appealable. The Rhodeses claim that the order is appealable as a collateral order.

Accordingly, we examine the appealability of the discovery orders pursuant to the collateral order doctrine. "[I]n general, discovery orders are not final, and are therefore unappealable." *Jones v. Faust*, 852 A.2d 1201, 1203 (Pa.Super.2004). However, "discovery orders involving privileged material are nevertheless appealable as collateral to the principal action" pursuant to Pa.R.A.P. 313 ("Collateral Orders"). *Id.* Rule 313(a) states that "[a]n appeal may be taken as of right from a collateral order of [a] ... lower court." Pa.R.A.P. 313(a).

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). "A discovery order is collateral only when it is separate and

distinct from the underlying cause of action." *Feldman v. Ide*, 915 A.2d 1208, 1211 (Pa.Super.2007).

*T.M. v. Elwyn, Inc.*, 950 A.2d 1050, 1056 (Pa.Super.2008). Generally, discovery orders involving purportedly privileged material are appealable because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot. *Id.* at 1057, citing *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999). Accordingly, we will review the trial court's order directing the Rhodeses to disclose their attorney's entire UIM file to USAA as part of the instant bad faith litigation. *See id.*, quoting *Berkeyheiser v. A–Plus Investigations, Inc.*, 936 A.2d 1117, 1123–1124 (Pa.Super.2007) ("Pennsylvania courts have held that discovery orders involving potentially confidential and privileged materials are immediately appealable as collateral to the principal action."); *compare Gocial v. Independence Blue Cross*, 827 A.2d 1216 (Pa.Super.2003) (disclosure orders adverse to the attorney-client privilege are permitted pursuant to Pa.R.A.P. 313).

"Generally, in reviewing the propriety of a discovery order, our standard of review is whether the trial court committed an abuse of discretion. However, to the extent that we are faced with questions of law, our scope of review is plenary." *Gormley v. Edgar*, 995 A.2d 1197, 1202 (Pa.Super.2010), citing *Berkeyheiser*, 936 A.2d at 1125.

In their first issue on appeal, the Rhodeses claim that their attorney is a non-party, and as a non-party, USAA was required to serve him with a subpoena *duces tecum* or file an independent action in equity in order to obtain his files. (Rhodeses' brief at 14.) The Rhodeses state that they do not have possession or control over their attorney's file. (*Id.* at

16.) The Rhodeses argue that USAA improperly requested access to their attorney's UIM file by serving a request for production on the Rhodeses pursuant to Pa.R.C.P. 4009.12, which does not apply because the Rhodeses' attorney is not a party to this action. According to the Rhodeses, proper discovery on non-parties is made pursuant to Pa.R.C.P. 4009.21. The Rhodeses further contend that the trial court erred in failing to address their objection that because their attorney is not a party, Rule 4009.12 is inapplicable. (*Id.*)

As USAA observes, this argument really goes to the trial court's application of the discovery rules generally, which falls outside the scope of this court's review of the collateral order. (USAA's brief at 5, 18.) *Gormley,* 995 A.2d at 1201 n. 3, citing *Rae v. Pennsylvania Funeral Directors Association,* 602 Pa. 65, 977 A.2d 1121 (2009). In *Rae,* our supreme court held that Rule 313 must be narrowly applied on an issue-by-issue basis, and only that portion of the order that is collateral is subject to collateral review. The *Rae* court specifically rejected a "whole order approach" to the collateral order doctrine permitting appellate review of all issues surrounding a collateral order once that order has satisfied Rule 313's three-pronged test on any basis. *Id.* at 80, 977 A.2d at 1130. Here, we are only reviewing the very narrow issue of whether the trial court improperly ordered disclosure of protected information. The issue of whether USAA should have proceeded under Pa.R.C.P. 4009.12 or 4009.21 is not properly before us.

■ Next, the Rhodeses contend that the trial court's discovery order violates the work product doctrine and Pa.R.C.P. 4003.3.[3] On this point, we agree.

The work product doctrine is codified in Rule 4003.3 of the Pennsylvania Rules of Civil Procedure. This rule states in pertinent part:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his attorney ... insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3. The protection against the discovery of work product is designed to shelter "the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." *Lepley v. Lycoming County Court of Common Pleas,* 481 Pa. 565, 573, 393 A.2d 306, 310 (1978) (quoting *United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)); *In Re Gartley,* 341 Pa.Super. 350, 491 A.2d 851, 859 (1985), *aff'd,* 513 Pa. 429, 521 A.2d 422 (1987) (citations omitted). *See also Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

*The Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144, 1164–1165 (Pa.Super.1999), *disapproved of on other grounds*

---

**3.** As stated above, the trial court specifically directed that any materials implicating the attorney-client privilege are protected. Therefore, the attorney-client privilege, codified at 42 Pa.C.S.A. § 5928, is not at issue.

*by Mishoe v. Erie Ins. Co.,* 573 Pa. 267, 824 A.2d 1153 (2003).

The "work product rule" is closely related to the attorney-client privilege but is broader because it protects any material, regardless of whether it is confidential, prepared by the attorney in anticipation of litigation. The doctrine was first set forth by the United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), protecting the mental impressions, conclusions, notes, memoranda, theories and research of an attorney from disclosure during discovery in actions governed by the Federal Rules of Civil Procedure. It was premised on the reasoning that this type of privacy was "the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests." *Id.* at 511, 67 S.Ct. 385. The doctrine has been adopted by all of the states, including Pennsylvania, at Pa. R.C.P. No. 4003.3, which provides that discovery shall not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories of a party's attorney.

*National Railroad Passenger Corp. v. Fowler,* 788 A.2d 1053, 1065–1066 (Pa. Cmwlth.2001).

■ "The protection of either an attorney's or representative's work product, however, is not absolute. The explanatory note to Rule 4003.3 states that work product may be discoverable in 'situations under the Rule where the legal opinion of an attorney becomes a relevant issue in an action....' " *The Birth Center,* 727 A.2d at 1165, quoting Pa.R.C.P. 4003.3 Explanatory Note. "Moreover, where the legal opinions, conclusions, memoranda, notes or summaries, legal research or legal theories become a relevant issue in a case, the law

in Pennsylvania is that the party seeking discovery need not show substantial need and undue hardship to obtain discovery of such materials." *Id.*

Instantly, the trial court determined that Attorney Serbin's work product generated during the pendency of the original UIM claim was discoverable because it had a direct bearing on the ensuing bad faith claim. For example, USAA asserts that Attorney Serbin may have withheld or misrepresented certain information, including the date of Mr. Rhodes's neck surgery. (USAA's brief at 9, 12.) USAA alleges that Mr. Rhodes underwent neck surgery in January 2003 but it was not informed by Attorney Serbin of this fact until March 2003. (*Id.* at 9.) USAA also seeks information concerning what was presented to the Rhodeses by Attorney Serbin regarding the language of the settlement/release agreement. (*Id.* at 13.) USAA argues that its conduct in the underlying UIM case can only be properly assessed in light of what the Rhodeses knew and when they knew it, and when such information was passed on to USAA and its representatives. (*Id.* at 12.)

The Rhodeses argue that to make out a claim for bad faith, they must establish: 1) that the insurer did not have a reasonable basis for denying benefits under the policy; and 2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. This court has also found bad faith where an insurer made an arbitrary, "low-ball" settlement offer bearing no reasonable relationship to the insured's reasonable medical expenses and which ultimately turned out to be far lower than the final arbitration award. *Rhodes, supra* at 1260, citing *Hollock v. Erie Ins. Exchange,* 842 A.2d 409, 413 (Pa.Super.2004) (*en banc*), *appeal dismissed as improvidently granted,* 588 Pa. 231, 903 A.2d 1185 (2006). The Rhodeses

state that all that matters is the conduct of USAA between the time it was informed of the UIM claim and the ultimate settlement of $175,000; their counsel's own conclusions, opinions, memoranda, *etc.* are wholly irrelevant. The Rhodeses state that USAA has never alleged any bad faith on their part or failure to cooperate with USAA's investigation into the UIM claim.

■ We reject USAA's argument. As the Rhodeses point out, the outcome of a bad faith action is dependent on the conduct of the insurer, not its insured. The remedy for an insurer's bad faith conduct has been codified at 42 Pa.C.S.A. § 8371, which provides:

> **§ 8371. Actions on insurance policies**
> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

"This Court has noted that the bad faith statute extends to the handling of UIM claims, despite their similarity to third party claims." *Condio v. Erie Ins. Exchange,* 899 A.2d 1136, 1142 (Pa.Super.2006), *appeal denied,* 590 Pa. 668, 912 A.2d 838 (2006) (citations omitted)

> To prove bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *Terletsky v. Prudential Property and Casualty Insurance Company,* 437 Pa.Super. 108, 649 A.2d, 680, 688 (1999) [(1994)]. Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured. *Williams v. Nationwide Mutual Ins. Co.,* 750 A.2d 881, 887 (Pa.Super.2000).

*Id.* at 1143. "[W]hen faced with a[UIM] claim, an insurance company's duty to its insured is one of good faith and fair dealing." *Id.* at 1145.

USAA has pointed to no case in which a plaintiff's attorney's files in the underlying UM/UIM claim were ruled discoverable in a subsequent bad faith lawsuit, and we are aware of none. All of the cases relied upon by USAA, in addition to being lower court decisions and therefore not binding on this court, are inapposite. (USAA's brief at 15.) For example, in *Little v. Allstate Ins. Co.,* 16 Pa.D. & C.3d 110 (Allegheny Cty.1980), *Yohe v. Mutual Life Ins. Co.,* 7 Pa.D. & C.4th 300 (York Cty. 1990), and *Reusswig v. Erie Ins.,* 49 Pa.D. & C.4th 338 (Monroe Cty.2000), the plaintiffs filed bad faith claims for refusal to pay benefits under the plaintiffs' insurance policies and sought information and documents relating to notes and materials prepared by the claims adjustor or investigator of their respective insurance carriers. In each case, the court held that the information was relevant because it could shed light on whether the plaintiffs' claims were denied without a reasonable foundation. *Reusswig,* 49 D. & C.4th at 349–350. Although USAA is correct that these cases also stand for the proposition that Rule 4003.3's protections extend only to the litigation of the claim for which the impressions, conclusions, and opinions were made and such protection does not apply to subsequent litigation that follows upon resolution of a prior claim, the sought-after information still must be relevant to the subsequent action in order to be subject to discovery. *Id.*

Similarly, in *Mueller v. Nationwide Mutual Ins. Co.*, 31 Pa.D. & C.4th 23 (Allegheny Cty.1996), the defendant insurer was ordered to turn over certain documents it had withheld on the grounds that they were protected by Rule 4003.3. The trial court found that, "Obviously, this information is relevant to the bad faith claims because the actual rationale and motives of the decision-makers are important factors in the resolution of these claims." *Id.* at 27. USAA complains that it is "patently unfair" that it should have to turn over its files on the underlying case while the Rhodeses' attorney's files are protected (USAA's brief at 13); however, such is the nature of bad faith litigation. The only issue here is the reasonableness of USAA's settlement offers and whether it acted in bad faith in refusing to meet the Rhodeses' $175,000 settlement demand sooner; this necessarily implicates USAA's state of mind in making the offers. USAA has failed to demonstrate how Attorney Serbin's files, by contrast, have any relevancy. USAA also cites to *Wuerl v. TEDCO Const. Corp.*, 80 Pa.D. & C.4th 374 (Allegheny Cty.2006); however, in that case, while the trial court opined that "[Rule 4003.3] protects only such disclosures prepared in anticipation of litigation or trial," the trial court ultimately decided that the materials were discoverable because Church Mutual Insurance Company, from whom the reports were sought, was not a party to the litigation. *Id.* at 378–379. The plaintiff had not filed a claim with Church and there was no indication that the reports were prepared in anticipation of litigation between the plaintiff and Church. *Id.*

Although not binding on this court, we find the following unreported decision from the federal district court to be in-structive. In *Leo v. State Farm*, 1996 WL 37827 (E.D.Pa.1996), the plaintiff brought a bad faith claim against her insurer, State Farm, in connection with the manner in which State Farm processed her claim for UIM benefits. State Farm sought to depose the plaintiff's attorney and also wanted him to produce his file for his representation of the plaintiff during the pendency of her UIM claim. *Id.* at *2. Among other things, State Farm wanted to ask the plaintiff's attorney about his response to State Farm's February 10, 1995 offer of $25,000 to settle the case the day of the arbitration hearing (the offer was refused and the arbitrators awarded the plaintiff $75,000, which was paid). *Id.* at *1–2. The plaintiff filed a motion for a protective order seeking to bar State Farm's discovery requests. *Id.* at *2.

The court in *Leo* held that the information State Farm sought from the plaintiff's attorney was irrelevant and therefore not discoverable.[4] Specifically, with regard to the plaintiff's attorney's response to State Farm's settlement offer, the *Leo* court stated:

> The plaintiff's bad faith claim will be resolved based on the reasonableness of the explanation State Farm offers for its failure to make a settlement offer until February 10, 1995. The reasonableness of State Farm's decision to refrain from making an offer until February 10, 1995 must be evaluated based on the information State Farm possessed at the time it made the decision. It is undisputed that State Farm made an offer of $25,000 on February 10, 1995. It is also undisputed that the offer was rejected. In her deposition, the plaintiff admitted that she rejected the offer. Thus, there can be no doubt that attorney Perlstein commu-

4. As the court found that none of the sought-after information was relevant, it declined to address the question of attorney-client privi-lege which the plaintiff had also asserted. *Id.* at *4.

nicated the $25,000 offer to his client and that she rejected it. The discussions attorney Perlstein and the plaintiff had regarding the $25,000 offer and their reasons for rejecting the offer are not relevant to the plaintiff's bad faith claim because that information only existed after the offer was made. For this reason, it could not have formed the basis for State Farm's decision not to make an offer earlier.

*Id.* at *3.

Similarly, in the instant case, USAA has failed to identify any information in Attorney Serbin's files from his representation of the Rhodeses during the pendency of the underlying UIM claim that could possibly be deemed relevant to the instant bad faith litigation.[5] USAA has not alleged that the Rhodeses made any material misrepresentations or engaged in fraudulent misconduct. USAA has not made any allegations that the Rhodeses failed to cooperate with its investigation into their claim for UIM benefits. Obviously, USAA is not responsible for information not in its possession. If it is true that USAA was not informed of Mr. Rhodes's neck surgery until March 2003, then it cannot be blamed for failing to act on information that was unavailable. At any rate, USAA contested the cause of Mr. Rhodes' neck injury and did not increase its initial $5,000 settlement offer until July 2003.

The focus of a bad faith claim is necessarily on the insurer's conduct and its basis for denying benefits under the policy or refusing to promptly settle the claim. USAA wants to turn the tables, as it were, and change the focus to its insureds and how they chose to present their UIM claim. USAA protests that "It is only fair to allow USAA to discover what the Rhodes[es] knew and when" (USAA's brief at 13); however, the burden already lies on the plaintiffs to prove by clear and convincing evidence that the insurer acted in bad faith. Furthermore, as stated above, any information an insured neglects to provide to his or her insurer cannot be charged to the insurer. Presumably, an insured will be motivated to submit any information helpful to his/her claim. The parties engaged in extensive discovery and Mr. Rhodes gave a statement under oath, submitted to an IME and provided USAA with medical authorizations. Essentially, USAA wants to engage in a fishing expedition to see if it can find anything damaging in Attorney Serbin's files, without any idea what such evidence might consist of; this is precisely what the attorney work product doctrine was meant to guard against.

---

5. USAA also contends that we cannot consider the Rhodeses' relevancy argument because of the issue-by-issue approach to the collateral order doctrine adopted in *Rae, supra.* We disagree. Here, the issue of relevancy is directly related to whether or not the work product doctrine applies. As stated in the explanatory notes to Rule 4003.3, the work product doctrine is not an absolute privilege, and an attorney's work product may be discoverable where relevant to the case. Therefore, the concept of relevancy is tied into the work product doctrine, and we may consider the Rhodeses' arguments. *Rae* involved the deliberative process privilege, not the work product doctrine. *Rae* held in rejecting the whole order approach to the collateral order doctrine that the Commonwealth Court had erred in addressing the appellants' relevancy argument after finding that their assertion of the deliberative process privilege was meritless. The *Rae* court found that the appellants should not have been permitted to bootstrap a relevancy claim onto an unsuccessful privilege claim, thereby obtaining immediate review of an issue which likely would have been postponed until final judgment. *Rae,* 602 Pa. at 78 n. 13, 977 A.2d at 1129 n. 13. Here, the issues of privilege and relevancy are intertwined and inseparable. As such, *Rae* is inapposite.

We are aware that in the Explanatory Comment to Pa.R.C.P. 4003.3, it states:

> As to representatives of a party, and sometimes an attorney, there may be situations where his conclusions or opinion as to the value or merit of a claim, not discoverable in the original litigation, should be discoverable in subsequent litigation. For example, suit is brought against an insurance carrier for unreasonable refusal to settle, resulting in a judgment against the insured in an amount in excess of the insurance coverage. Here discovery and inspection should be permitted in camera where required to weed out protected material.

However, we believe that this commentary is clearly directed to insurers, not plaintiff insureds and their attorneys. *See The Birth Center,* 727 A.2d at 1165–1166 (stating that "The explanatory note expressly refers to the situation presented in the instant case," and holding that where the defendant insurer made its state of mind relevant to the issue of whether its payment of the excess verdict was conclusive evidence that its refusal to settle the underlying case was made in good faith, it waived its right to challenge discovery of its attorney's letters as well as the claims supervisor's notes and memoranda). As discussed above, the relevant inquiry in a bad faith case is whether the insurer had a reasonable basis for its conduct. The state of mind of the insured is irrelevant.[6] For these reasons, we will reverse the trial court's order compelling disclosure of Attorney Serbin's files to the Rhodeses' insurer and the defendant in this bad faith action, USAA.

Order reversed.

---

6. It is conceivable that in certain circumstances, a plaintiff's attorney's work product in the underlying claim could become relevant in a subsequent bad faith action. However, this is not that case. Furthermore, where the legal opinions, memoranda, *etc.* of an attorney do become a relevant issue, the court should conduct an *in camera* review of the attorney's file to weed out any protected material as suggested by the explanatory note to Rule 4003.3. Here, the trial court issued an order compelling disclosure of Attorney Serbin's entire file.