J-A26042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TUGIRLS, INC., D/B/A JUSTINA TUSHAK, CPA, EA & COMPANY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KINGFLY SPIRITS, INC., FORMERLY DOING BUSINESS AS PORT OF PITTSBURGH DISTILLERY, LLC | : | No. 1374 WDA 2023 |
| | : | |
| v. | : | |
| | : | |
| BLAKE RAGGHIANTI | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EBBREZZA, INC. AND MARK J. WILLSON | : | |

Appeal from the Order Entered October 31, 2023
In the Court of Common Pleas of Erie County Civil Division at No(s):
2020-12021

BEFORE:  BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: January 28, 2025**

Appellant, Blake Ragghianti, appeals from the trial court's October 31, 2023 order denying his motion for a protective order.  Upon review, we vacate and remand.

By way of relevant background, Tugirls, Inc., d/b/a Justina Tushak, CPA, EA & Company ("Tugirls") filed an amended complaint against Kingfly Spirits, LLC, formerly doing business as Port of Pittsburgh Distillery, LLC ("Kingfly"), asserting claims for breach of contract and unjust enrichment.[1]  Tugirls alleged, *inter alia*, that it provided professional accounting and tax services for Kingfly and was not paid for its work.  It sought a judgment of $37,770.50 against Kingfly.

Kingfly filed an answer, new matter, and counterclaims against Tugirls, and subsequently filed a complaint to join Appellant — who Kingfly said had a minority interest in Kingfly during the relevant time — as an additional defendant.  According to Kingfly, among other things, Tugirls and Appellant conspired to defraud Kingfly by: submitting invoices for accounting and tax services that were not authorized or performed properly and/or completely; making false and fraudulent entries in Kingfly's financial records that were intended to cover up criminal conduct; and illegally increasing the value of Appellant's interest in Kingfly.  Against Tugirls, Kingfly brought claims for civil conspiracy, aiding and abetting, breach of fiduciary duty, and wrongful use of civil proceedings/malicious prosecution/abuse of process.  Against Appellant, Kingfly advanced claims for indemnification/contribution, civil conspiracy, aiding and abetting, and breach of fiduciary duty.  For its counterclaims

---

[1] Kingfly is a distillery in Pittsburgh. ***See, e.g.***, Tugirls's Amended Complaint, 12/22/20, at ¶ 2; Appellant's Brief at 6.

against Tugirls and claims against Appellant, Kingfly represented that it sought judgments in an amount in excess of the jurisdictional limits of the court.

Appellant subsequently filed an answer, new matter, and counterclaim against Kingfly, asserting, *inter alia*, that he is a 50% owner of Kingfly and had authority to retain Tugirls to perform accounting and tax services; that he was locked out of Kingfly on February 12, 2020; and that he has not been paid for work he performed. He also denied being part of the conspiracy that Kingfly alleged. He brought claims against Kingfly for breach of contract and unjust enrichment/quantum meruit, seeking damages in excess of the applicable arbitration limits. Further, Appellant filed a complaint against additional defendants, Mark J. Willson and Ebbrezza, Inc. ("Ebbrezza"), asserting claims for indemnification/contribution and breach of fiduciary duty, and seeking judgment in excess of the applicable arbitration limits.[2] He alleged, *inter alia*, that Mr. Willson and Ebbrezza breached fiduciary duties and duties of good faith and fair dealing that were owed to Kingfly and Appellant.[3]

---

[2] Appellant averred that, on March 2, 2015, he "and [Mr.] Willson through an entity known as Ebbrezza…, executed the Operating Agreement of Port of Pittsburgh Distillery, LLC, with [Appellant] and Ebbrezza … each owning a fifty (50%) percent interest in the company." **See** Appellant's Answer, New Matter, and Cross-Claim, 9/23/21, at ¶ 43.

[3] Mr. Willson and Ebbrezza filed preliminary objections to Appellant's complaint on May 5, 2023, and the trial court overruled them on June 9, 2023. On June 19, 2023, Mr. Willson and Ebbrezza sought reconsideration and oral argument. Our review of the 2,797-page record does not indicate that the trial court ruled upon this request. It also does not appear that Mr. Willson and Ebbrezza filed a responsive pleading following the trial court's June 9, 2023 ruling.

- 3 -

Pertinent to the issues before us, on August 7, 2023, Appellant filed a motion for a protective order. Therein, among other things, Appellant alleged that, while Kingfly was taking the deposition of Justina Tushak, the representative of Tugirls, Kingfly's counsel indicated to Ms. Tushak that "we were able to extract from [Appellant's] laptop all the emails and text messages he was exchanging with you and [David] Klett and others." Motion for Protective Order, 8/7/23, at ¶ 3.[4] According to Appellant, Mr. Klett "is an attorney who has represented [Appellant] since 2003 or 2004 in various legal matters[,]" and "was never engaged by [Kingfly] or any affiliate to represent [Kingfly] or any affiliate." *Id.* at ¶ 5.[5] Appellant said that, in questioning Ms. Tushak, counsel for Kingfly "ma[de] it clear that he and his client are in possession of emails and text messages generated well after February 12, 2020, the date upon which the [p]arties agree that [Appellant's] relationship with [Kingfly] ended." *Id.* Appellant further averred that, "[a]t no time during their association did [Kingfly] advise [Appellant] that his emails were subject to inspection or subject to reading by [Kingfly] or its representatives." *Id.* at ¶ 6. He asserted that "[t]he access of [Kingfly] and its counsel to clearly privileged emails between [Appellant] and his attorney presents the likelihood of substantial prejudice to [Appellant's] interests." *Id.* at ¶ 7. As a result,

_____

[4] Appellant says this deposition took place on June 22, 2023. *See* Appellant's Brief at 7-8.

[5] Mr. Klett represented Appellant in the proceedings below until he filed a praecipe to withdraw his appearance on July 10, 2023.

Appellant moved for a protective order: (a) disqualifying Kingfly's counsel, George R. Farneth, Esquire, from further representation of any party in this matter; (b) directing Kingfly, Mr. Willson, Ebbrezza, their attorneys, and any other person to whom they have provided copies of any privileged documents to destroy and delete any and all communications in their possession between Appellant and Mr. Klett and certify such destruction to the court; and (c) prohibiting Mr. Farneth from having any communication with any successor counsel or any witness regarding the facts of this case.

That same day, August 7, 2023, Appellant additionally filed an emergency motion for a protective order regarding the deposition of Mr. Klett. Among other things, Appellant requested that the court prohibit the deposition of Mr. Klett as Kingfly purportedly intended to question Mr. Klett regarding privileged information. In the alternative, Appellant stated the court should enter an order limiting questioning of Mr. Klett to matters not involving any communications between Mr. Klett and Appellant, or advice given by Mr. Klett to Appellant.[6]

Kingfly subsequently filed a response to Appellant's motion for a protective order. Among other things, Kingfly claimed that, at the time the emails and text messages in question were exchanged, Appellant "had not yet retained Mr. Klett to represent him and, therefore, no attorney-client privilege was triggered or existed with respect to the emails or text messages."

_____

[6] On August 18, 2023, Mr. Klett filed a "Response to and Joinder in Emergency Motion for Protective Order" regarding his deposition.

Kingfly's Response to Appellant's Motion for Protective Order, 9/1/23, at 2-3. In any event, Kingfly maintained that Appellant and Mr. Klett "waived the attorney-client privilege by revealing information and documentation that were arguably protected by the attorney-client privilege[,]" and stated that the emails and text messages "could not be protected by the attorney-client privilege because they involve, *inter alia*, Mr. Klett's request for and acceptance of product that [Appellant] stole from [Kingfly] and Mr. Klett['s] directing [Appellant] to engage in conduct that violated the fiduciary duties he owed [Kingfly] and Mr. Willson." ***Id.*** at 3.[7] Kingfly also advanced that, "given that [Appellant] exchanged and/or stored the emails and text messages on a laptop that was owned by [Mr.] Willson and was on loan to [Kingfly] and used by multiple people, at no time did [Appellant] have any expectation of privacy and/or he waived any attorney-client privilege to which he may have been entitled." ***Id.*** In response to Appellant's request that evidence be destroyed, Kingfly said the destruction of the evidence would violate multiple Rules of Professional Conduct, given that the evidence is not only relevant and discoverable in this action, but also in other actions. ***Id.*** at 2-3.[8]

---

[7] In Kingfly's prior pleadings, Kingfly averred, *inter alia*, that Mr. Klett "may have orchestrated and/or contributed to the [c]onspiracy" that Kingfly alleged against Appellant and Ms. Tushak. **See** Kingfly's Answer, New Matter, and Counterclaim, 3/3/21, at ¶ 75; Kingfly's Complaint to Join Appellant, 8/24/21, at ¶ 10(cc).

[8] At that time, two other civil actions relating to Kingfly were pending. ***See, e.g.***, Kingfly's Response to Appellant's Motion for Protective Order at 3 (stating *(Footnote Continued Next Page)*

Kingfly additionally filed a response to Appellant's emergency motion for a protective order regarding Mr. Klett's deposition, a response to Mr. Klett's response to and joinder in that motion, and a cross-motion to deem privilege and confidentiality waived and to compel production of documents for *in camera* review. In the cross-motion, *inter alia*, Kingfly requested the court enter an order: (a) precluding the parties from destroying any evidence pending an evidentiary hearing before the court; (b) requiring Appellant and Mr. Klett to submit to the court for *in camera* inspection all text messages and emails they claim are privileged and should be destroyed; (c) requiring Appellant and Mr. Klett to submit to the court for *in camera* inspection all written communications between them regarding Mr. Klett's alleged representation of Appellant, including but not limited to all engagement letters, letters of representation, invoices, and proof of payment of invoices; and (d) requiring Appellant and Mr. Klett to submit to the court for *in camera* inspection all other evidence that supports, tends to prove, or tends to disprove the allegations set forth in Appellant's motion for a protective order and Mr. Klett's response to and joinder in the emergency motion for a protective order regarding his deposition.

Kingfly also provided a verified statement from Mr. Willson as an attachment to an omnibus brief it filed in opposition to the motions for

---

that Appellant and Mr. Klett "are asking to destroy evidence that is not only relevant and discoverable in this action but also the two other civil actions that are presently pending, as well as any criminal cases that may be initiated"); Appellant's Brief at 6-7 (referencing other related cases).

protective order and in support of its cross-motion. In the statement, among other things, Mr. Willson conveyed that Appellant used Mr. Willson's personal laptop, which Mr. Willson had originally loaned to an employee at Kingfly to use in connection with the business, and Mr. Willson believed that Appellant affirmatively took steps to place text messages, pictures, and documents on it. He said that he thought Appellant was using the laptop for business purposes and that he could not identify any way in which Appellant made any effort to protect the privacy of any material saved on the laptop. He also claimed that, prior to February 10, 2020, Appellant was represented by an attorney other than Mr. Klett, and Mr. Willson did not have any knowledge or belief that Mr. Klett was serving as Appellant's attorney until February 24, 2020.

Appellant thereafter filed a response to Kingfly's cross-motion. He said, *inter alia*, that he had no intention of destroying his own records and that submitting the emails and text messages in question to the court for review would place an undue burden on the court. In addition, he filed a verified statement, asserting, among other things, that he never accessed his email or text messages from Mr. Willson's computer, and did not use Mr. Willson's computer except to assist and train an employee with data entry for the business. He also claimed that Mr. Willson was aware, for years before February 24, 2020, that Mr. Klett was his personal attorney, and averred that Mr. Klett has served as his personal attorney since at least 2004. He said he had email communications with Mr. Klett regarding his involvement with

Kingfly and received advice from Mr. Klett on how to deal with various situations that arose while he worked at Kingfly.

Following further filings by the parties, including Mr. Willson's and Ebbrezza's joining Kingfly's filings relating to the at-issue communications, the trial court entered multiple orders on October 31, 2023. In relevant part, the trial court entered an order denying Kingfly's cross-motion to deem privilege and confidentiality waived and to compel production of documents for *in camera* review. It issued another order granting Appellant's motion for a protective order regarding the deposition of Mr. Klett and limiting questions directed to Mr. Klett to matters not involving communications between him and Appellant, or advice given by Mr. Klett to Appellant. Additionally, the trial court entered an order denying Appellant's motion for a protective order. No evidentiary hearing was held before the trial court entered these orders, and it provided no explanation for its rulings in these orders.

On November 3, 2023, Appellant filed a motion for reconsideration regarding the trial court's October 31, 2023 order denying his motion for a protective order with respect to the purportedly privileged communications between Appellant and Mr. Klett. The trial court did not rule on it. On November 17, 2023, Appellant filed a notice of appeal from this order.[9] The trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement,

_____

[9] Kingfly, Mr. Willson, and Ebbrezza also filed a notice of appeal, challenging multiple of the trial court's October 31, 2023 orders. Their appeal was ultimately quashed.

and he timely complied. The trial court later issued a Rule 1925(a) opinion that is barely two pages, addressing both Appellant's appeal as well as Kingfly's, Mr. Willson's, and Ebbrezza's appeal. There, with respect to the reasons for its decision, the trial court vaguely stated: "Following a careful review of the voluminous filings in this case, the [c]ourt found the relief sought was not merited and denied the motions at issue and overruled the objections to discovery." Trial Court Opinion, 1/5/24, at 2.

On appeal, Appellant raises the following questions for our review:

1. Is the order at issue separable from and collateral to the main issue in the case, representing a right too important to be denied review, which will be irreparably lost if review is postponed until final judgment in the case?

2. Did the court below err in failing to resolve the issues of fact concerning the manner in which … Kingfly … obtained "all the emails and text messages [Appellant] was exchanging with [Ms. Tushak] and Mr. Klett (Appellant's counsel) and others," thus, failing to determine whether the emails and text messages between [Appellant] and his attorney were privileged and whether they were obtained in violation of [the] law?

3. Did the court below err in permitting [Kingfly] and … Ebbrezza … and [Mr.] Willson to maintain and use for their benefit a large quantity of attorney-client privileged communications between [Appellant] and his counsel?

4. Did the court below err in failing to disqualify attorneys Farneth and [Nicholas] Miller[, Esquire[10]] from continuing to represent … Kingfly … and … Ebbrezza … and [Mr.] Willson in the case since they have already reviewed them in violation of Pa.R.P.C. 4.4(b) and have knowledge of a large amount of privileged information relating to [Appellant's] analysis and strategies?

---

[10] Mr. Miller represents Mr. Willson and Ebbrezza.

- 10 -

Appellant's Brief at 4-5.[11]

## First and Second Issues

For ease of disposition, we address Appellant's first and second issues together. Appellant argues that the trial court "erred in failing to conduct any evidentiary proceeding to determine the nature of the information possessed by Kingfly and how Kingfly came into possession of it." Appellant's Brief at 19 (emphasis omitted; unnumbered).[12] He says he and Mr. Willson set forth "diametrically opposed positions" in their verified statements, pointing out that he claimed he did not use the computer for his personal email whereas Mr. Willson averred that Appellant placed the at-issue communications onto the computer. *Id.* at 19-20 (unnumbered). Because the trial court did not hold an evidentiary hearing to decide issues of fact such as this, which he says bear upon whether any privilege has been waived, Appellant urges us to remand this matter so that a hearing can be held on Appellant's motion. ***See id.*** at 20-21 (asserting that the current record does not support a finding that the materials in question were not privileged or that the privilege was waived,

_____

[11] In response to Appellant's brief, Kingfly, Mr. Willson, and Ebbrezza filed a joint brief. For simplicity, we refer to their joint brief as "Appellees' Brief." Tugirls has not filed a brief.

[12] The Argument section of Appellant's brief is not paginated, though other sections of his brief are numbered.

and stating that the case should be remanded for a hearing on Appellant's motion) (unnumbered).[13]

Kingfly, Mr. Willson, and Ebbrezza agree that a remand for an evidentiary hearing is necessary. **See** Appellees' Brief at 2 (stating that they "agree that the [t]rial [c]ourt erred in [not] establishing a sufficient evidentiary record in matters concerning Appellant's asserted privilege of his documents and communications that are in Appellees' possession"). They claim that Appellant "does not even know what is in [their] possession[,]" and state that "no sufficient evidentiary record has been established that this Court could utilize to make any determination that Appellees improperly possess Appellant's communications." **Id.** at 7.

As Appellant points out in his first issue, before addressing the parties' arguments, we must initially determine whether we have jurisdiction to review this claim. "An appeal may be taken only from a final order unless otherwise permitted by statute or rule." **Carbis Walker, LLP v. Hill, Barth and King, LLC**, 930 A.2d 573, 577 (Pa. Super. 2007) (citation omitted). Generally, discovery orders are not final and are therefore unappealable. **Rhodes v. USAA Cas. Ins. Co.**, 21 A.3d 1253, 1258 (Pa. Super. 2011) (citation omitted).

---

[13] Elsewhere in Appellant's brief, Appellant represents that he does not even know what communications Kingfly possesses. **See** Appellant's Brief at 23 (claiming Kingfly "has refused to provide copies of the communications it claims to possess"); **id.** at 27 (stating that Kingfly "has refused to provide [Appellant] with a copy of his own communications so that the damage can be better assessed").

Both parties, however, insist that we have jurisdiction under one of the exceptions to the general rule — the collateral order doctrine. *Carbis Walker*, 930 A.2d at 577; *see also* Appellant's Brief at 13-19 (unnumbered); Appellees' Brief at 2-5. "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "[T]he collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae v. Pennsylvania Funeral Directors Ass'n*, 977 A.2d 1121, 1130 (Pa. 2009).

We agree that Appellant's second issue satisfies the collateral order doctrine. First, whether the trial court "erred in failing to conduct any evidentiary proceeding to determine the nature of the information possessed by Kingfly and how Kingfly came into possession of it[,]" *see* Appellant's Brief at 19 (emphasis omitted; unnumbered), is separable from the underlying dispute, which involves claims of breach of contract, civil conspiracy, and breach of fiduciary duty, among others. *Carlino v. East Brandywine, L.P. v. Brandywine Village Associates*, 260 A.3d 179, 194 (Pa. Super. 2021) ("The first prong, separability, occurs when we can address the issue surrounding the disputed order without analyzing the ultimate issue in the underlying case.") (citation omitted); *see also Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015) ("With respect to the first prong of

the collateral order doctrine, an order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute.") (cleaned up).

Second, the right involved is too important to be denied review, as Appellant claims that his communications with Mr. Klett are protected by the attorney-client privilege. "The attorney-client privilege is deeply anchored in our law and has been recognized as an important right." *Carlino*, 260 A.3d at 194 (citation omitted).

Third, if review is postponed until final judgment, Appellant's claim will be irreparably lost. Although this case is somewhat unique in that Kingfly purports to already possesses the claimed privileged materials, this Court has previously deemed this prong met where an inadvertent disclosure occurred and an appellant challenged the trial court's subsequent ruling that the disclosure was not protected by the attorney-client privilege and discoverable. *Carbis Walker*, 930 A.2d at 576-77. *See also Carlino*, 260 A.3d at 194 ("Because disclosure of privileged documents cannot be undone, a claim of privilege is lost if review is postponed until a final judgment.") (citation omitted). We therefore conclude that we have jurisdiction to review Appellant's second issue under the collateral order doctrine. *See Carbis Walker*, 930 A.2d at 577 ("This Court has previously considered the merits of an appeal from a discovery order requiring the production of documents where there is a colorable claim of attorney-client privilege which made appellate review proper at this stage of the proceedings.") (cleaned up).

Turning to the merits of Appellant's second issue, we likewise agree that a remand is necessary, given the many facts in dispute and the insufficient evidentiary record before us. Among various other things, including how Kingfly came into possession of the communications and their content, it is not clear the extent of communications purportedly possessed by Kingfly, whether Mr. Klett was serving as Appellant's attorney when the communications were made, and why Appellant has been unable to obtain the communications for review so far. Because of the numerous factual questions that remain unresolved, we vacate the trial court's order and remand for the court to conduct an evidentiary hearing regarding the facts alleged in Appellant's motion for a protective order and the responses thereto. If appropriate, the trial court may permit discovery and take other action that would facilitate review of this privilege issue.[14] Based on the facts found by

---

[14] We observe that:

> The party asserting privilege bears the burden of producing facts establishing proper invocation of the privilege. Once the invoking party has made the appropriate proffer, then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure should be compelled either because the privilege has been waived or because an exception to the privilege applies. Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.

***Carlino***, 260 A.3d at 197 (cleaned up).

> [F]our elements must be satisfied in order to successfully invoke the protections of attorney-client privilege:

*(Footnote Continued Next Page)*

the trial court, it should then ascertain whether the at-issue communications are protected by the attorney-client privilege, if any privilege has been waived or an exception to the privilege applies, and if any of the relief requested in Appellant's motion for a protective order is warranted, along with any other necessary determinations. Going forward, we also encourage the parties to try to litigate amicably.[15, 16]

_____

> 1) The asserted holder of the privilege is or sought to become a client.
>
> 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.
>
> 3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.
>
> 4) The privilege has been claimed and is not waived by the client.

*Carbis Walker*, 930 A.2d at 579 (citation omitted).

[15] We reiterate that the record in this case is 2,797 pages with discovery still ongoing. It contains multiple motions to compel and motions for sanctions. *See also* Appellant's Brief at 6 (recognizing that Kingfly "has filed numerous motions, which have been met by numerous motions filed by Appellant"); Appellees' Brief at 7 (seemingly conceding that "despite generating a 22-page docket, [Kingfly] has yet to answer one interrogatory or produce one document") (quoting Appellant's brief).

[16] Given our disposition, it is premature for us to consider Appellant's third or fourth issues, including whether they satisfy the collateral order doctrine. Appellant's Brief at 21-23 (arguing in Appellant's third issue the trial court erred in failing to grant his motion for a protective order and "for the disgorgement of the protected information since [Kingfly] is improperly in
*(Footnote Continued Next Page)*

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/28/2025

---

possession of a large quantity of privileged material which it can use to [Appellant's] detriment in the case[,]" and asserting that Kingfly's attorney violated the Rules of Professional Conduct) (emphasis omitted); *id.* at 23-28 (arguing in Appellant's fourth issue that "Attorneys Farneth and Miller must be disqualified because of their extensive knowledge of privileged material") (emphasis omitted).  We therefore do not address them.