119 A.3d 306

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Scott Wayne BLYSTONE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 27, 2014.

Decided July 20, 2015.

James F. Hibey, Esq., Rebecca Liu, Esq., Michael Wiseman, Esq., Philadelphia, for Scott Wayne Blystone.

Anthony John Krastek, Esq., PA Office of Attorney General, Gregory Joseph Simatic, Esq., for Commonwealth of Pennsylvania.

SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.

## *OPINION*

Justice TODD.

This matter comes to us upon Appellant's interlocutory appeal from an order of the Fayette County Court of Common Pleas. In this capital case, the United States District Court for the Western District of Pennsylvania held that Appellant Scott Wayne Blystone was entitled to receive a new sentenc-

ing hearing after concluding that his counsel was ineffective for failing to investigate and develop penalty-phase mitigating evidence in the form of institutional records and expert mental-health evidence. The United States Court of Appeals for the Third Circuit affirmed, and Appellant presently awaits a new penalty-phase hearing following the completion of discovery.

Throughout the course of counsel's current mitigation investigation, Appellant's mother, Norma Blystone, has consistently refused to divulge certain information regarding Appellant's childhood—which Appellant deems "critical"—unless she is assured that the information she provides will not be made public. In an attempt to provide Mrs. Blystone with such assurances and to obtain this additional information from her, Appellant filed a motion in the Court of Common Pleas of Fayette County for limited courtroom closure and temporary sealing of transcripts with respect to Mrs. Blystone's testimony, any expert testimony addressing the information Mrs. Blystone reveals, and any closing arguments referencing such testimony. The trial court denied the motion, and Appellant has filed an interlocutory appeal from that order pursuant to Pa.R.A.P. 313.[1] For the reasons that follow, we conclude that our Court lacks jurisdiction to review the trial court's interlocutory order denying Appellant's closure motion, and, accordingly, this appeal must be quashed.

## I. Background

The facts underlying Appellant's conviction are set forth more fully in this Court's opinion resolving Appellant's direct appeal, *see Commonwealth v. Blystone ("Blystone I")*, 519 Pa. 450, 549 A.2d 81 (1988); however, a brief recitation of those facts is necessary to provide context to the instant matter. On September 9, 1983, at approximately 12:00 a.m., Appellant was driving with his girlfriend and two others, when he picked up a hitchhiker and later robbed and murdered him, shooting

---

1. We have jurisdiction over direct capital appeals pursuant to 42 Pa.C.S. § 722(4). Additionally, "[a]n appeal authorized by law from an interlocutory order in a matter shall be taken to the appellate court having jurisdiction of final orders in such matter." *Id.* § 702(a).

him in the back of the head. Appellant was charged with first-degree murder, robbery, conspiracy to commit first-degree murder, and conspiracy to commit robbery. Following a jury trial in the Fayette County Court of Common Pleas, he was found guilty of each of the aforementioned crimes.

During Appellant's penalty-phase hearing, Appellant's trial counsel elected not to offer any mitigating evidence. Ultimately, the jury found one aggravating circumstance—that Appellant killed the victim in the perpetration of a felony—and it sentenced Appellant to death pursuant to 42 Pa.C.S. § 9711(c)(1)(iv) ("The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstance."). Appellant also received a consecutive sentence of 10 to 20 years imprisonment for his robbery conviction. Appellant appealed his judgment of sentence, and, on October 17, 1988, this Court affirmed. *Blystone I.*

Thereafter, on October 12, 1995, Appellant, represented by new counsel, filed a petition under the Post Conviction Relief Act ("PCRA"),[2] raising various claims of ineffectiveness of trial counsel, trial court error, and constitutional violations. Relevant to the instant matter, Appellant asserted, *inter alia,* that his counsel was ineffective for failing to offer mitigating evidence during the penalty phase of his capital trial and, more specifically, for failing to interview his family about mitigating evidence concerning his childhood. During the ensuing PCRA hearing, Appellant offered a variety of mitigation evidence that he claimed was available to counsel at the time of trial, including testimony from, *inter alia,* his parents, Mr. and Mrs. Blystone; Dr. Patricia Fleming, a clinical psychologist and neuropsychologist; and Dr. Alec Whyte, a psychiatrist, as well as affidavits from Mr. and Mrs. Blystone; Appellant's sisters, Cynthia Gaye Guthrie and Julie Ann Dice; and others.

Appellant's father, Norman Blystone, testified that Appellant frequently acted out and that he used corporal punish-

2. 42 Pa.C.S. §§ 9541–9546.

ment to discipline Appellant approximately once or twice a week beginning when Appellant was seven or eight years old until his early teenage years. N.T. Hearing, 11/3/1995, at 100–03. Mr. Blystone described that he used various methods of disciplining Appellant, including whipping him with a belt, slapping him with his hands, and kicking him. *Id.* at 104. Additionally, Mr. Blystone stated that Appellant's prior counsel did not discuss mitigating circumstances with him prior to Appellant's trial and did not ask him to aid with obtaining his son's school, military, or medical records. *Id.* at 94. Mr. Blystone's affidavit contained similar information, stating that he "was the disciplinarian in the family," and that he punished Appellant more than his other children. Affidavit of Norman Blystone, 10/5/1995, at 3.

Mrs. Blystone stipulated that she would testify to the same information as Mr. Blystone. N.T. Hearing, 11/3/1995, at 126. Additionally, with respect to Mr. Blystone's use of corporal punishment, Mrs. Blystone testified that there were times that she tried to stop Mr. Blystone from using such punishment on Appellant and that there were times that she felt that Mr. Blystone's actions in disciplining Appellant were excessive. *Id.* at 127. Mrs. Blystone explained that, when she felt that her husband was being excessive, she would try to talk to him about it, which sometimes developed into an argument; however, she claimed that, "most of the time," she was successful in getting her husband to stop. *Id.* at 128. Additionally, Mrs. Blystone stated in her affidavit that her husband was the family's disciplinarian, that he was "very stern" with Appellant, and that he punished Appellant more than the other children, and did so with his belt or his hand. Affidavit of Norma Blystone, 10/5/1995, at 2.

The affidavits of Appellant's sisters similarly revealed that Mr. Blystone set the rules in the house, disciplined the children, and was "very strict." Affidavit of Julie Ann Dice, 10/5/1995, at 1. The affidavits further described that Appellant "got the most whippings," "couldn't learn from being punished," and "couldn't stay out of Dad's way." Affidavit of Cynthia Gaye Guthrie, 10/5/1995, at 2.

Dr. Fleming testified that she diagnosed Appellant with organic brain damage, bipolar mood disorder, polysubstance abuse, and borderline personality disorder, N.T. Hearing, 11/14/1995, at 46, 48, 53, 54, based upon her clinical interviews and psychological testing of Appellant, Appellant's life history, and her review of Appellant's Department of Corrections, hospital, and navy records. *Id.* at 19–21, 27. Specifically, Dr. Fleming explained that Appellant developed bipolar personality disorder, in part, because he was "truly abused physically over a long period of time," the abuse was "inconsistent, it was irrational, and not based on fact," and, thus, "[Appellant] did not know how to deal with the world" and "withdrew." *Id.* at 49.

Dr. Whyte testified that, based upon his interview with Appellant, his review of affidavits from Appellant's mother, father, and other family members, and his review of Appellant's correctional institution records, navy records, and hospital records, *id.* at 69–70, he diagnosed Appellant with borderline personality disorder, bipolar mood disorder, and organic personality disorder. *Id.* at 74–75.

Additionally, Appellant introduced various institutional records, including a Mayview State Hospital competency evaluation report diagnosing Appellant with antisocial personality disorder, Department of Correction Records from Appellant's previous incarceration in Maryland documenting Appellant's good behavior in prison and various health issues, and records from the Navy recommending Appellant be discharged due to the severity of his personality disorder.

On January 4, 1996, the PCRA court denied Appellant's petition, specifically finding, with respect to Appellant's claim that trial counsel was ineffective in failing to prepare mitigation evidence, that trial counsel interviewed Appellant and his family regarding potential mitigating evidence and discrediting testimony from Appellant's family to the contrary. Appellant appealed, and this Court affirmed, concluding, *inter alia,* that Appellant's counsel was not ineffective for failing to present mitigating evidence because Appellant refused to allow mitigating evidence to be presented on his behalf. *Com-*

*monwealth v. Blystone ("Blystone II"),* 555 Pa. 565, 725 A.2d 1197, 1205–06 (1999).

Appellant subsequently filed a petition for writ of *habeas corpus,* and supplement thereto, with the United States District Court for the Western District of Pennsylvania, again alleging that his trial counsel was ineffective for failing to investigate and introduce available mitigating evidence. Relying upon the PCRA court's credibility determinations, the district court rejected Appellant's contention that his trial counsel was ineffective for failing to investigate and develop lay-witness mitigation testimony; however, the district court found that Appellant's trial counsel was indeed ineffective for failing "to investigate and present expert mental health mitigation evidence and mitigation evidence of his good conduct in prison and lack of future dangerousness if sentenced to life in prison." *Blystone v. Horn,* 2005 U.S. Dist. LEXIS 40922, *116 (W.D.Pa. filed Mar. 31, 2005). Thus, the district court granted the writ of *habeas corpus* with respect to Appellant's death sentence on March 31, 2005, and found that he was entitled to a new sentencing hearing. The Third Circuit affirmed on December 22, 2011. *Blystone v. Horn,* 664 F.3d 397 (3d Cir.2011).

Thereafter, the sentencing court appointed Appellant new counsel for the penalty-phase hearing. In preparation for the hearing, Appellant's counsel began conducting discovery and investigating potential mitigation witnesses, including Mrs. Blystone. Mrs. Blystone indicated the existence of dysfunction and trauma within Appellant's family during the interview, but, fearing that her husband would grow upset if she revealed the information, she refused to divulge specific details unless she was assured the information would not be made public. Mrs. Blystone was similarly evasive when interviewed by Dr. Leslie Lebowitz, a psychologist appointed by the court to evaluate the mitigating impact of Appellant's traumatic upbringing, again refusing to reveal additional information about the dysfunction and trauma within Appellant's family unless Dr. Lebowitz could promise her that it would not be made public.

As a result of Mrs. Blystone's refusal to cooperate, Appellant's counsel filed a motion for limited courtroom closure and temporary sealing of transcripts, seeking closure of the courtroom during Mrs. Blystone's testimony regarding Appellant's traumatic upbringing, during expert testimony discussing the same, and during closing arguments referring to such evidence, as well as seeking the temporary sealing of the related transcripts until Mrs. Blystone and her husband passed away. In support of closure, Appellant asserted that Mrs. Blystone "has considerable information concerning abuse suffered by [Appellant] at the hands of his father" which she would not reveal "absent a guarantee that the media and the public (and, by extension, her husband) will not be privy to the details of her testimony." Closure Motion, 7/9/2014, at 7. Appellant claimed that his right to present all available mitigating evidence and, thus, his right to a fair trial, outweighed the public's right to access criminal proceedings under the First Amendment of the United States Constitution and Article I, Sections 7 and 11 of the Pennsylvania Constitution, and that closure was narrowly tailored to the objective of eliciting Mrs. Blystone's testimony because the closure would be limited to Mrs. Blystone's testimony, and expert testimony and closing arguments addressing that testimony. Appellant also maintained that there were no reasonable alternatives to closure available which would address Mrs. Blystone's concern about her husband learning of the substance of her testimony.

Additionally, Appellant's counsel submitted an affidavit from Dr. Lebowitz with the motion, which detailed Mrs. Blystone's lack of cooperation and opined that "[a]lthough [Dr. Lebowitz] cannot be certain of the precise nature of the information," she is "confident that it relates to [Mrs. Blystone's] perspective on the dysfunction that has marked this family over the course of fifty years, and it may include other, as-of-yet undisclosed anecdotes of abuse and dysfunction that she has witnessed." Declaration of Leslie Lebowitz, P.H.D., 1/27/13, at 3.

The trial court ultimately denied Appellant's motion, concluding the motion "was not sufficient to warrant an Order overcoming the presumption of openness of trials" articulated

in *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987). Trial Court Order, 3/19/2014, at 1. In support of its decision, the trial court noted that the motion did not aver that Appellant attempted to subpoena Mrs. Blystone or use other means to gain her cooperation, nor did it suggest there would be any risk to Mrs. Blystone's life or physical safety if she testified. Additionally, the court highlighted that Appellant filed the motion months before trial and before discovery had been completed, rendering the motion premature. Appellant presently appeals the trial court's interlocutory order pursuant to Pa.R.A.P. 313(b), asserting the trial court erred in denying his closure motion.

## II. Jurisdiction

Before we may entertain the merits of Appellant's underlying claim, we must first determine whether this Court has jurisdiction to consider the appeal under Pa.R.A.P. 313(b). Although the Commonwealth has not raised a question regarding our jurisdiction over the trial court's interlocutory order denying closure, we may nevertheless raise the issue of jurisdiction *sua sponte*.[3] *Commonwealth v. Shearer*, 584 Pa. 134, 882 A.2d 462, 465 n. 4 (2005).

It is well settled that, generally, appeals may be taken only from final orders; however, the collateral order doctrine permits an appeal as of right from a non-final order which meets the criteria established in Pa.R.A.P. 313(b). *Commonwealth v. Wright*, 621 Pa. 446, 78 A.3d 1070, 1077 (2013). Pa.R.A.P. 313 is jurisdictional in nature and provides that "[a] collateral order is an order [1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). Thus, if a non-final order satisfies each of

3. Appellant merely cites Pa.R.A.P. 313(b) in his jurisdictional statement as the basis for our jurisdiction over this matter, but does not otherwise offer any argument as to how, specifically, the trial court's interlocutory order satisfies Pa.R.A.P. 313(b). The Commonwealth does not challenge this basis for jurisdiction.

the requirements articulated in Pa.R.A.P. 313(b), it is immediately appealable. *Wright,* 78 A.3d at 1077. However, we "construe the collateral order doctrine narrowly" so as to "avoid 'piecemeal determinations'" and protracted litigation. *Rae v. Pa. Funeral Dirs. Ass'n,* 602 Pa. 65, 977 A.2d 1121, 1129 (2009).

With respect to the first prong of the collateral order doctrine, an order is separable from the main cause of action "if it can be resolved without an analysis of the merits of the underlying dispute." *Commonwealth v. Williams,* 624 Pa. 405, 86 A.3d 771, 781 (2014). Stated differently, an order is separable if it is "entirely distinct" from the underlying issue in the case. *Id.* at 782. Although we tolerate a degree of interrelatedness "between merits issues and the question sought to be raised in the interlocutory appeal," the claim must nevertheless be "conceptually distinct from the merits of plaintiff's claim." *Pridgen v. Parker Hannifin Corp.,* 588 Pa. 405, 905 A.2d 422, 433 (2006) (quoting *Johnson v. Jones,* 515 U.S. 304, 314, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

As to the second prong, for purposes of Rule 313(b), a right is important if "the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule." *Williams,* 86 A.3d at 782. Additionally, "the order [must] involve[ ] rights deeply rooted in public policy going beyond the particular litigation at hand," and "[i]t is not sufficient that the issue is important to the particular parties involved." *Id.*

Upon review, in the present case, regardless of whether the order is separable from the main cause of action, and regardless of whether Appellant's right to investigate and present mitigating testimony from his mother at his capital sentencing hearing may be deemed important for purposes of Rule 313(b), we find that Appellant's claimed need for closure to vindicate this right will not be irreparably lost if review is postponed until after the sentencing hearing; thus, his claim fails the third prong of the collateral order doctrine. This case is unlike, for example, an interlocutory appeal of an order

directing the discovery of privileged material, the prototypical example of a collateral order. *See, e.g., Williams, supra; Commonwealth v. Harris,* 612 Pa. 576, 32 A.3d 243 (2011); *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547 (1999). In such cases, we have noted that "[o]nce putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal" because the disclosure of such material "effectively destroy[s]" any privilege. *Harris,* 32 A.3d at 249. By contrast, Appellant may challenge the trial court's order denying his closure request on appeal after final judgment, and, should we determine that the trial court erred in denying closure, we could vacate the judgment of sentence and order a new sentencing hearing at which Appellant would be entitled to introduce the testimony from Mrs. Blystone in partially closed proceedings. In short, his claimed right will not be irreparably lost. Thus, because any error by the trial court in denying Appellant's closure motion is fully remediable after final judgment, it does not satisfy the third prong of the collateral order doctrine.

Accordingly, as Appellant has not satisfied the final prong of the collateral order doctrine, we are constrained to conclude the trial court's order is not appealable under Pa.R.A.P. 313(b). Thus, because we lack jurisdiction to consider the instant appeal, we find the appeal must be quashed.

Appeal quashed. Jurisdiction relinquished.

Justices BAER and STEVENS join the opinion.

Chief Justice SAYLOR files a dissenting opinion.

Justice EAKIN files a concurring opinion.

Chief Justice SAYLOR, dissenting.

In this 31-year-old first-degree-murder case, I would undertake interlocutory appellate review of the substantive issue presented as a matter of this Court's supervisory prerogative.

The majority finds it appropriate to defer review until after the conclusion of the new penalty hearing, since "any error by the trial court in denying Appellant's closure motion is fully

remediable" at such time. Majority Opinion, at 271, 119 A.3d at 313. At this juncture, however, it is my position that extraordinary measures are appropriate to minimize the possibility of further, serial penalty hearings, perhaps entering into yet another decade.

Justice EAKIN, concurring.

I agree with the expression of Justice Baer in his concurring opinion. The majority correctly notes appellant's claimed "right will not be irreparably lost if review is postponed until after the sentencing hearing[.]" Majority Op., at 270, 119 A.3d at 312. I write merely to acknowledge that were this a Commonwealth appeal, be it from an order allowing or denying closure, quashal might not be appropriate. As the Commonwealth cannot appeal once the jury has returned its verdict, appellate review would be foreclosed and the right would indeed be irreparably lost.