J-A05011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| STUART PILTCH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT S. LIPSEY, ESQUIRE, | |
| Appellee | No. 3213 EDA 2014 |

Appeal from the Order Entered November 12, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-00557

BEFORE:  OLSON AND OTT, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.: **FILED JULY 12, 2016**

Appellant, Stuart Piltch, appeals from the order entered on November 12, 2014, which denied, among other things, his request for a protective order.  We vacate in part and remand.

On January 9, 2014, Appellant instituted the current action by filing a complaint against Robert S. Lipsey, Esquire ("Attorney Lipsey").  Within Appellant's amended complaint, Appellant summarized the relevant factual allegations:

> [Arnold M. Katz ("Katz")] has been associated with [Appellant] for more than [20] years in a variety of businesses.  As part of their long-standing business relationship, Katz would from time to time maintain and distribute funds that belonged to [Appellant] from Katz's personal bank account for investment purposes.  Katz would do so on [Appellant's] behalf and at [Appellant's] direction. . . .

---

*Former Justice specially assigned to the Superior Court.

[With respect to the case at bar, Katz] . . . delivered a check in the amount of [$500,000.00] to [Attorney Lipsey] . . . to be placed in [Attorney Lipsey's] attorney escrow account pursuant to an oral escrow agreement among [Appellant], Delaware Valley Financial Group ("DVFG") and [Attorney Lipsey]. The [$500,000.00], which belonged to [Appellant], was an advance on an investment that [Appellant] agreed to make to finance premiums on life insurance policies purportedly sold by DVFG, an insurance broker and premium financing enterprise. At the time, [Attorney Lipsey] served as DVFG's General Counsel and was also an officer of DVFG who was directly involved in the company's operations as well as in the transactions concerning the financing of DVFG. Under the escrow agreement, [Appellant] agreed to invest [$500,000.00] in DVFG to finance premiums for insurance policy holders; DVFG agreed to pay [Appellant] a return on his investment; and [Attorney Lipsey] agreed to hold the [$500,000.00] in his attorney escrow account until two conditions were met: 1) the insurance policies for which premiums were being financed by [Appellant's] investment were put in place; and 2) [Appellant], through Katz, authorized the release of his funds from [Attorney Lipsey's] escrow account. Despite his commitment to the contrary, almost immediately after depositing the check in his escrow account, [Attorney Lipsey] wired [Appellant's] money to an account held by DVFG, prior to either of the conditions being met.

Appellant's Amended Complaint, 7/9/14, at "Introduction" and ¶¶ 6-7 (some internal paragraphing omitted).

Appellant averred that Attorney Lipsey refused to return his $500,000.00. *Id.* at ¶ 26. As a result, Appellant claimed that Attorney Lipsey was liable to him for breach of oral contract, promissory estoppel, conversion, and breach of fiduciary duty. *Id.* at ¶¶ 28-48.

Attorney Lipsey answered Appellant's amended complaint and averred that he: "was not an officer or director of [DVFG];" "was not directly involved in the operation of DVFG's business and transactions concerning the

- 2 -

financing of DVFG;" "was not a party to an escrow agreement involving [Appellant] or [Katz];" and, "did not agree to hold money in an escrow account or as an escrow agent." Attorney Lipsey's Answer, 1/12/15, at "Response to [Appellant's] Introduction" and ¶¶ 2, 10, 13, 15, 17, and 19-27. Moreover, Attorney Lipsey averred:

> [Appellant] did not have an escrow account. A check from Katz drawn on Katz's personal checking account was deposited into [Attorney Lipsey's] IOLTA. Katz instructed [Attorney Lipsey] to release the funds to DVFG. There was no condition on the release of funds from [Attorney Lipsey's] IOLTA communicated to [Attorney Lipsey]. [Attorney Lipsey] had no interaction with [Appellant] and was unaware of [Appellant's] alleged involvement. [Attorney Lipsey] did not breach a contract, fiduciary duty or a promise.

*Id.* at "Response to [Appellant's] Introduction."

In March 2014, Attorney Lipsey propounded a request for production of documents upon Appellant. Within the request, Attorney Lipsey sought the disclosure of the following documents:

> 24. [Appellant's] income tax returns (IRS form 1040) from January 1, 2000 through January 1, 2012.
>
> 25. A list of all entities [Appellant] holds an interest in.
>
> 26. All IRS form 1099's filed by [Appellant] from January 1, 2000 through January 1, 2012.
>
> 27. All IRS form 1099's indicating incoming revenue [Appellant] received in any capacity from January 1, 2000 through January 1, 2012.
>
> 28. All IRS form 1099's indicating incoming revenue from all of the following entities:

a. Stoney Hill Partners

b. Feldman Piltch Consulting

c. PYA

d. Cambridge Advisory Group, Inc.

e. Hinsdale, LLC

f. Health and Productivity Consulting, Inc.

29. All documentation of income for the above entities from January 1, 2000 through January 1, 2012.

30. All documentation of income for [Appellant] from January 1, 2000 through January 1, 2012.

. . .

34. Documentation of all revenues the following entities received from January 1, 2000 through January 1, 2012 for the following entities[:]

a. Stoney Hill Partners, LLC

b. Feldman Piltch Consulting, LLC

c. Cambridge Advisory Group, Inc.

d. Hinsdale, LLC

e. Health and Productivity Consulting, Inc.

f. PYA

Attorney Lipsey's First Set of Requests for Production of Documents, 3/11/14, at ¶¶ 24-30 and 34 (hereinafter "Attorney Lipsey's Requests for Production of Documents").

Appellant objected to each of the above requests on the basis that they were "overbroad, [sought] information that is not relevant to the subject matter of this litigation, and/or the [r]equest[s are] not reasonably calculated to lead to the discovery of admissible evidence." **See** Appellant's Response to Attorney Lipsey's Requests for Production of Documents, 5/19/14, at ¶¶ 24-30 and 34. In response, Attorney Lipsey filed a motion to compel production of the requested documents. Attorney Lipsey's Motion to Compel, 9/8/14, at ¶¶ 93-97.

On October 23, 2014, the trial court granted Attorney Lipsey's motion to compel and ordered Appellant to produce the requested documents within 20 days. Trial Court Order, 10/23/14, at 1.

Appellant promptly filed a "Motion for Partial Reconsideration and Protective Order." Within the motion, Appellant again claimed that Attorney Lipsey's "requests for all personal tax returns and all income and revenue [Appellant] received from any source for a 12-year period starting in 2000, are absurdly irrelevant, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence." Appellant's Motion for Partial Reconsideration and Protective Order, 11/7/14, at ¶¶ 36-45. Further, Appellant's motion sought entry of a protective order to prevent further dissemination of documents produced during discovery. **Id.** at ¶¶ 53-54. Appellant claimed that this protective order was necessary because "information that is responsive to the requests subject to the [discovery] order includes confidential and sensitive financial information of [Appellant]

and his entities, including, without limitation, bank records and financial statements." *Id.* at ¶ 53. Appellant claimed that he "should not be required to produce such information without an appropriate confidentiality agreement in place that would govern the disclosure of the information." *Id.* at ¶ 54; *see also* Pa.R.C.P. 4012(a)(9).

On November 14, 2014, the trial court denied Appellant's request for partial reconsideration and for a protective order. Thereafter, on November 20, 2014, Appellant filed a notice of appeal from the trial court's October 23, 2014 and November 14, 2014 orders. Appellant's Notice of Appeal, 11/14/14, at 1. Appellant numbers three claims on appeal:

> 1. Whether the trial court erred when it granted [Attorney Lipsey's] motion to compel as to document request [numbers] 24-30 [and] 34 and ordered the production of Appellant's confidential and sensitive financial information in response to these requests because these requests – seeking financial information and tax returns for Appellant and the entities he controls for a 12-year period dating back to 2000 – are overly broad, irrelevant to the underlying dispute involving a single deposit into [Attorney Lipsey's] escrow account, not reasonably calculated to lead to the discovery of admissible evidence, and therefore beyond the scope of permissible discovery?
>
> 2. Whether the trial court erred when it denied Appellant's request for partial reconsideration of the October 21 order to the extent it affirmed the portions of the order requiring the production of information in response to document request [numbers] 24-30 [and] 34?
>
> 3. Whether the trial court erred in denying Appellant's request for entry of a protective order pursuant to Pennsylvania Rule of Civil Procedure 4012 to the extent Appellant is required to produce his confidential and

sensitive financial information in accordance with the October 21, 2014 order?

Appellant's Brief at 4 (some internal capitalization omitted).

As we have explained, this Court is obligated to "first ascertain whether the [order appealed from] is properly appealable, because the question of appealability implicates the jurisdiction of this [C]ourt." ***Commonwealth v. Borrero***, 692 A.2d 158, 159 (Pa. Super. 1997). "The general rule is that, unless otherwise permitted by statute, only appeals from final orders are subject to appellate review." ***Commonwealth v. Sartin***, 708 A.2d 121, 122 (Pa. Super. 1998). In relevant part, Pennsylvania Rule of Appellate Procedure defines a "final order" as any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1). [1]

In this case, the trial court's November 14, 2014 order is not final, as it concerned a discovery matter. ***See also Jones v. Faust***, 852 A.2d 1201, 1203 (Pa. Super. 2004) ("in general, discovery orders are not final, and are therefore unappealable"). Thus, the challenged order constitutes a non-final, interlocutory order.

Interlocutory orders are appealable in certain circumstances. Our Supreme Court explained:

---

[1] Rule 341 also defines a "final order" as any order that "is expressly defined as a final order by statute" or "is entered as a final order pursuant to [Pa.R.A.P. 341(c)]." Pa.R.A.P. 341(b)(2) and (3). However, these two categories are not applicable to the current appeal.

in addition to an appeal from final orders of the Court of Common Pleas, our rules provide the Superior Court with jurisdiction in the following situations: interlocutory appeals that may be taken as of right, Pa.R.A.P. 311; interlocutory appeals that may be taken by permission, Pa.R.A.P. [312]; appeals that may be taken from a collateral order, Pa.R.A.P. 313; and appeals that may be taken from certain distribution orders by the Orphans' Court Division, Pa.R.A.P. 342.

*Commonwealth v. Garcia*, 43 A.3d 470, 478 n.7 (Pa. 2012) (internal quotations omitted), *quoting* **McCutcheon v. Phila. Elec. Co.**, 788 A.2d 345, 349 n.6 (Pa. 2002).

The discovery order at issue is not appealable as of right (*per* Pa.R.A.P. 311) and Appellants did not ask for or receive permission to appeal the order (*per* Pa.R.A.P. 312). Thus, the question before this Court is whether the order in this case (or any aspect of the order) is appealable under the collateral order doctrine. **See** Pa.R.A.P. 313.

Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." **In re Bridgeport Fire Litigation**, 51 A.3d 224, 230 n.8 (Pa. Super. 2012); Pa.R.A.P. 313(b). An order is "separable from and collateral to the main cause of action" if the order "is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." **K.C. v. L.A.**, 128 A.3d 774, 778 (Pa. 2015) (internal quotations omitted), *citing*

***Commonwealth v. Blystone***, 119 A.3d 306, 312 (Pa. 2015). Further, with respect to the "separability" prong of the test, our Supreme Court explained that, "although [the Supreme Court will] tolerate a degree of interrelatedness between merits issues and the question sought to be raised in the interlocutory appeal, the claim must nevertheless be conceptually distinct from the merits of plaintiff's claim." ***Id.*** (internal quotations and citations omitted).

> Our Supreme Court has also emphasized that:
>
> > the collateral order doctrine is a specialized, practical [exception to] the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

***Melvin v. Doe***, 836 A.2d 42, 46-47 (Pa. 2003) (internal citations omitted).

In keeping with the narrow interpretation of the collateral order doctrine, our Supreme Court has held that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." ***Rae v. Pa. Funeral Dir.'s Ass'n***, 977 A.2d 1121, 1130 (Pa. 2009). Therefore, even if the collateral order test "is satisfied with respect to one [appellate] issue," the assertion of jurisdiction does not necessarily mean that we have "jurisdiction to consider every issue within the ambit of the appealed order." ***Id.*** at 1123.

Appellant's first two claims contend that the trial court erred when it ordered the production of Appellant's "confidential and sensitive financial information in response to [Attorney Lipsey's discovery] requests." Appellant's Brief at 4. We conclude that we do not have jurisdiction to consider this portion of the trial court's order.

Appellant does not claim that the financial documents requested in paragraphs 24-30 and 34 are privileged. *See Rhodes v. USAA Cas. Ins. Co.*, 21 A.3d 1253, 1258 (Pa. Super. 2011) ("[g]enerally, discovery orders involving purportedly privileged material are appealable" under the collateral order doctrine). Rather, Appellant claims that the financial records are "confidential and sensitive" and that the "requests for all personal tax returns and all income and revenue [Appellant] received from any source for a 12-year period starting in 2000, are absurdly irrelevant, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence." Appellant's Reply Brief at 13 and Appellant's Motion for Partial Reconsideration and Protective Order, 11/7/14, at ¶¶ 36-45.

It is true that the tax returns, return information, and financial records of Appellant and the entities Appellant controls are private, confidential, and sensitive. *See* 26 U.S.C. § 6103(a) (providing that, generally, federal tax "[r]eturns and return information shall be confidential"); *see also Dougherty v. Heller*, ___ A.3d ___, 2016 WL 3261814 at *17 n.10 (Pa. 2016) ("information contained in federal tax returns . . . is made confidential per federal statute"). However, as the trial court ably explained,

"[Appellant] placed his financial information at issue by filing suit to collect monies for which there is no documentation." Trial Court Opinion, 9/18/15, at 15. To be sure, for Appellant to prevail on his underlying claims, Appellant must prove that he owned the $500,000.00 that Katz transferred to Attorney Lipsey and that Katz acted as Appellant's agent when he made the transfer. To prove (and to defend against) these claims requires the production of income sources, tax returns, and financial records for Appellant and Appellant's entities. How far back in time these income sources, tax returns, and financial records need to go undoubtedly depends upon the relevance of the material to the underlying claims and defenses. However, an assessment of the relevance of the material would require that we analyze the merits of the underlying dispute. As such, that portion of the trial court's order that granted production of the requested financial information is not "conceptually distinct from the merits of plaintiff's claim" and requires "an analysis of the merits of the underlying dispute." **Blystone**, 119 A.3d at 312. Thus, we do not have jurisdiction to consider Appellant's first two claims on appeal, as both claims concern a portion of the trial court's order that is not "separable from and collateral to the main cause of action." Pa.R.A.P. 313(b).

For Appellant's third claim on appeal, Appellant contends that the trial court erred when it denied his request for entry of a protective order to protect against dissemination of documents produced during discovery. We agree.

- 11 -

At the outset, we conclude that we have jurisdiction to consider the portion of the trial court's November 12, 2014 order that denied Appellant's request for entry of a protective order. Indeed, this portion of the trial court's order satisfies all three prongs of the collateral order doctrine, as the denial of the protective order: 1) is "separable from and collateral to the main cause of action" (it is concerned only with the issue of whether the trial court properly denied a protective order – and does not require any analysis "of the merits of the underlying dispute"); 2) "involves a right too important to be denied review" (Appellant sought entry of a protective order to protect against the dissemination of the tax returns and financial documents that were produced in discovery; the documents all contain private and sensitive financial information and, with respect to the federal tax returns and return information, are "made confidential per federal statute;" **Dougherty**, ___ A.3d at ___, 2016 WL 3261814 at *17;[2] **see** 26 U.S.C. § 6103(a)); and, 3)

_____

[2] In **Dougherty**, the Pennsylvania Supreme Court analyzed the "importance" prong of the collateral order doctrine and held:

> we find that the specific privacy concern in issue must be evaluated and adjudged to satisfy the importance requirement. In this regard, we make the distinction among different orders of privacy interests, such as those of a constitutional magnitude or recognized as such by statute, as compared with lesser interests.

**Dougherty**, ___ A.3d at ___, 2016 WL 3261814 at *17. Further, with respect to the privacy interests that are "recognized as such by statute," the **Dougherty** Court specifically cited to the "privacy interest in information
*(Footnote Continued Next Page)*

"presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost" (as we held in **Dibble v. Penn State Geisinger Clinic, Inc.**, 806 A.2d 866, 870 (Pa. Super. 2002), "there is no question that if the documents which have been disclosed to the [opposing party] are in turn disseminated . . . appellate review of the issue will be moot because such dissemination cannot be undone"). Therefore, we have jurisdiction to consider the portion of the trial court's November 12, 2014 order that denied Appellant's request for entry of a protective order.

With respect to our standard of review over Appellant's claim of error, we have held:

> It is the responsibility of the trial court to oversee discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure. With regard to requests for protective orders . . . [, t]here are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court. Whether to grant or deny the motion, and what kind or kinds of protective orders to issue are matters that lie within the sound judicial discretion of the court, and the court's determination as to these matters will not be disturbed unless that discretion has been abused.

**Hutchison v. Luddy**, 606 A.2d 905, 908 (Pa. Super. 1992) (internal citations and quotations omitted). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or

_(Footnote Continued)_ ―――――――――――

contained in federal tax returns," which, the Court noted, "is made confidential _per_ federal statute." **Id.** at *17 n.10.

- 13 -

exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." ***Commonwealth v. Brown***, 839 A.2d 433, 435 (Pa. Super. 2003).

In this case, Appellant sought entry of a protective order under Pennsylvania Rule of Civil Procedure 4012(a)(9), to protect against the dissemination of any documents produced during discovery. Rule 4012(a)(9) states:

> (a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
> . . .
>
> (9) that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.

Pa.R.C.P. 4012(a)(9).

Within Appellant's motion, Appellant claimed that a protective order was necessary because the documents included "confidential and sensitive financial information of [Appellant] and his entities, including, without limitation, bank records[, tax returns,] and financial statements." Appellant's Motion for Partial Reconsideration and Protective Order, 11/7/14, at ¶ 53. According to Appellant, he "should not be required to produce such information without an appropriate confidentiality agreement in place that

would govern the disclosure of the information." *Id.* at ¶ 54; *see also* Pa.R.C.P. 4012(a)(9). The trial court denied Appellant's request, explaining that it denied the protective order because the documents were relevant to the underlying case. *See* Trial Court Opinion, 9/18/15, at 15.

Respectfully, the trial court's reasoning on this issue was mistaken. True, the relevancy of the documents is pertinent to their discoverability. However, with respect to Appellant's request for a protective order, Appellant was not seeking to prevent the discovery of the documents. Rather, Appellant claimed that he "should not be required to produce such information without an appropriate confidentiality agreement in place that would govern the disclosure of the information." Appellant's Motion for Partial Reconsideration and Protective Order, 11/7/14, at ¶ 54. Thus, Appellant requested a protective order to avoid further dissemination of documents subject to the court's discovery order. *See* Appellant's Reply Brief at 24 ("[w]ithout a protective order in place, [Attorney Lipsey] will be free to share and disclose [Appellant's] and his entities' confidential personal and business information"). Simply stated, the relevance of the documents is not germane to the issue of whether a protective order should issue, or whether the circumstances justify such a measure to protect against dissemination of confidential material.

Moreover, in this case, we conclude that the trial court abused its discretion when it completely denied Appellant's motion for a protective order. To be sure, by definition, all of the documents at issue here contain

private and sensitive financial information and most of the documents are federal tax returns and information, which are "made confidential *per* federal statute." ***Dougherty***, ___ A.3d at ___, 2016 WL 3261814 at *17 n.10; ***see also*** 26 U.S.C. § 6103(a). As Appellant noted, he "should not be required to produce such information without an appropriate confidentiality agreement in place that would govern the disclosure of the information." Appellant's Motion for Partial Reconsideration and Protective Order, 11/7/14, at ¶ 54. As such, we conclude that Appellant demonstrated good cause as to why he was entitled to a protective order. Therefore, we vacate this portion of the trial court's order and remand so that the trial court may exercise its discretion and fashion an appropriate confidentiality order to guard against disclosure of Appellant's and his entities' personal and business information, including financial information.

Order vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/2016