J-A17043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TALATHA MCLAURIN, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF YVONNE G. FIELDS, DECEASED<br><br>Appellee<br><br>v.<br><br>ARIA HEALTH, ARIA HEALTH SYSTEM, ARIA HEALTH PHYSICIAN SERVICES, ARIA HEALTH FOUNDATION, GREGORY C. BOLTON, SR., M.D., QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS INCORPORATED, AND ROBERT M. LUCAS, M.D., D.D.S., PH.D.,<br><br>Appellants | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 2582 EDA 2016 |

Appeal from the Order June 29, 2016
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: #03934, April Term, 2015

BEFORE: GANTMAN, P.J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:          **FILED OCTOBER 03, 2017**

      Appellants, Quest Diagnostics, Inc. and Quest Diagnostics Clinical Laboratories, Inc., appeal from the order of June 29, 2016, which granted in part and denied in part its request for a protective order. We vacate in part and remand.

---

[*] Retired Senior Judge assigned to the Superior Court.

We take the underlying facts and procedural history in this matter from the trial court's February 16, 2017 opinion and our independent review of the certified record.

> This professional negligence and medical malpractice action was brought following the death of [sixty-three] year old Yvonne G. Fields who died of complications related to endometrial cancer of the uterus. The decedents' estate, represented by her daughter, Talatha McLaurin[, Appellee], alleges that [Appellants and the co-defendants] failed to properly evaluate or timely diagnose cancer. The complaint named various Quest Diagnostics entities and Robert M. Lucas, M.D.[,] a pathologist who worked for Quest Diagnostics. It also named the gynecologist, Gregory C. Bolton, M.D., who treated the decedent.
>
> With specific reference to [Appellants], [Appellee] claims that a slide with an endometrial tissue biopsy specimen was misread. The specimen was reportedly collected by Doctor Bolton and submitted to Quest Diagnostics Clinical Laboratories in Horsham, where it was received, accessioned, interpreted by Doctor Lucas, and reported by [Appellants] as atrophic endometrium. [Appellee] avers that it should have been reported as insufficient tissue.

(Trial Court Opinion, 2/16/17, at 2-3).

On May 1, 2015, Appellee filed the instant medical malpractice action. During discovery, a dispute arose between Appellee and Appellants regarding Appellee's request that Appellants produce their internal policies and procedures pertaining to the interpretation of pathology specimens. Appellants unsuccessfully attempted to negotiate an agreement with Appellee in the form of a stipulated protective order, which stated that

Appellee and her counsel would not disseminate or use the documents outside of the litigation.

On March 2, 2016, Appellee filed a motion to compel production of the documents. At a hearing on March 16, 2016, Appellants advised the trial court that they wished to present the documents to the court for review and to argue for a protective order. The trial court advised Appellants to address the issue via a separate motion for a protective order, which Appellants filed on March 21, 2016.

On June 8, 2016, the trial court held a hearing on the motion for a protective order. By order of June 29, 2016, the trial court granted the motion in part and denied it in part.[1] On July 6, 2016, Appellants filed a motion for reconsideration, which the trial court denied on September 12, 2016. The instant, timely appeal followed. On January 17, 2017, the trial court ordered Appellants to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellants filed a timely Rule 1925(b) statement on February 3, 2017. *See id.* On February 16, 2017, the trial court filed an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellants raise the following question for our review:

---

[1] The trial court granted the motion as to documents from the personnel file of Dr. Lucas and with respect to various contracts between Appellants and some of the co-defendants in this matter.

- 3 -

Should [Appellants'] request to produce [their] secret, proprietary and competitively sensitive documents, which are based on and derived from years of data and analysis unknown to the public, only under the terms of a standard [p]rotective [o]rder which would limit [Appellee's] ability to disseminate the confidential and proprietary documents, be granted?

(Appellants' Brief, at 3).

Prior to addressing the merits of Appellants' contention, this Court is obligated to "first ascertain whether the [order appealed from] is properly appealable, because the question of appealability implicates the jurisdiction of this [C]ourt." *Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. 1997) (citations omitted). "The general rule is that, unless otherwise permitted by statute, only appeals from final orders are subject to appellate review." *Commonwealth v. Sartin*, 708 A.2d 121, 122 (Pa. Super. 1998) (citations omitted). In relevant part, the Pennsylvania Rules of Appellate Procedure define a "final order" as any order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).

In the instant matter, the trial court's June 29, 2016 order is not final, as it concerned a discovery matter. *See Jones v. Faust*, 852 A.2d 1201, 1203 (Pa. Super. 2004) ("in general, discovery orders are not final, and are therefore unappealable"). Thus, the challenged order constitutes a non-final, interlocutory order.

Interlocutory orders are appealable in certain circumstances. Our Supreme Court explained:

in addition to an appeal from final orders of the Court of Common Pleas, our rules provide the Superior Court with jurisdiction in the following situations: interlocutory appeals that may be taken as of right, Pa.R.A.P. 311; interlocutory appeals that may be taken by permission, Pa.R.A.P. [312]; appeals that may be taken from a collateral order, Pa.R.A.P. 313; and appeals that may be taken from certain distribution orders by the Orphans' Court Division, Pa.R.A.P. 342.

*Commonwealth v. Garcia*, 43 A.3d 470, 478 n.7 (Pa. 2012) (quotation marks and citation omitted).

The order at issue is not appealable as of right (per Pa.R.A.P. 311) and Appellants did not ask for or receive permission to appeal the order (per Pa.R.A.P. 312). Thus, the question before this Court is whether the order in this case (or any aspect of the order) is appealable under the collateral order doctrine. *See* Pa.R.A.P. 313.

Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; and 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 230 n.8 (Pa. Super. 2012) (citation omitted); *see also* Pa.R.A.P. 313(b). An order is "separable from and collateral to the main cause of action" if the order "is entirely distinct from the underlying issue in the case and if it can be resolved without an analysis of the merits of the underlying dispute." *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015) (internal

quotation marks and citation omitted). Further, with respect to the "separability" prong of the test, our Supreme Court explained that, "[a]lthough [the Supreme Court will] tolerate a degree of interrelatedness between merits issues and the question sought to be raised in the interlocutory appeal, the claim must nevertheless be conceptually distinct from the merits of plaintiff's claim." *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015) (quotation marks and citations omitted).

> Our Supreme Court has also emphasized that:
>
> the collateral order doctrine is a specialized, practical [exception to] the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

*Melvin v. Doe*, 836 A.2d 42, 46-47 (Pa. 2003) (citations omitted).

In keeping with the narrow interpretation of the collateral order doctrine, our Supreme Court has held that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." *Rae v. Pa. Funeral Dir.'s Ass'n*, 977 A.2d 1121, 1130 (Pa. 2009). Therefore, even if the collateral order test "is satisfied with respect to one [appellate] issue," the assertion of jurisdiction does not necessarily mean that we have "jurisdiction to consider every issue within the ambit of the appealed order[.]" *Id.* at 1123.

- 6 -

Here, Appellants claim that the trial court erred in denying their request for a protective order to preclude any dissemination of their standard operating procedures. (**See** Appellant's Brief, at 11). We can address this claim without analyzing Appellee's underlying medical malpractice claim. **See Crum v. Bridgestone/Firestone North American Tire, LLC**, 907 A.2d 578, 583 (Pa. Super. 2006). Thus, Appellants have met the first prong.

With respect to the second prong, the Pennsylvania Supreme Court has explained that this prong is satisfied "if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." **Ben v. Schwartz**, 729 A.2d 547, 552 (Pa. 1999) (citation omitted). Further, "it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." **Melvin**, **supra** at 47 (citation omitted).

Here, Appellants assert that the documents in question contain trade secrets and failure to protect them will result in the exposure of those secrets, causing "irreparable competitive harm[.]" (Appellants' Brief, at 11). We have stated, "[t]he right to confidentiality in matters involving proprietary and trade secrets is rooted in public policy and impacts on individuals and entities other than those involved in the current

litigation." ***Crum***, ***supra*** at 584 (citation omitted).  Further, Pennsylvania Rule of Civil Procedure 4012(a)(9), which controls the discovery of trade secrets, permits the trial court to order "that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way."  Pa.R.C.P. 4012(a)(9). Thus, we find that the trade-secret protection is entrenched in public policy beyond the litigation at hand, and is important enough to justify immediate appellate review. ***See Crum***, ***supra*** at 584.

Lastly, we look at the irreparable loss prong.  Again, Appellants argue that the failure of the trial court to enter the protective order will risk exposure of their trade secrets.  (***See*** Appellants' Brief, at 11).  Our Supreme Court has stated, "[t]here is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." ***Ben***, ***supra*** at 552 (citation omitted).  Clearly, if disclosed, the confidentiality of the information in question is lost.  Accordingly, Appellants have met the third prong.

For the reasons discussed above, we hold that the June 29, 2016 order denying in part the motion of Appellants for a protective order is collateral and appealable of right under Pa.R.A.P. 313.  Therefore, we will now address the merits of Appellants' contention.

With respect to our standard of review, we have held:

> It is the responsibility of the trial court to oversee discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovery of matters allowed by the Rules of Civil Procedure. With regard to requests for protective orders . . . [,]
>
> [t]here are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court. Whether to grant or deny the motion, and what kind or kinds of protective orders to issue are matters that lie within the sound judicial discretion of the court, and the court's determination as to these matters will not be disturbed unless that discretion has been abused.

*Hutchison v. Luddy*, 606 A.2d 905, 908 (Pa. Super. 1992), *appeal discontinued*, 611 A.2d 712 (Pa. 1992) (internal citations and quotations omitted). "An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will." *Commonwealth v. Brown*, 839 A.2d 433, 435 (Pa. Super. 2003) (citation omitted).

As discussed above, Appellants sought entry of a protective order under Pennsylvania Rule of Civil Procedure 4012(a)(9), to protect against the dissemination of any documents produced during discovery. Again, we note that Rule 4012(a)(9) states:

> (a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:

\*    \*    \*

> (9) that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.

Pa.R.C.P. 4012(a)(9).

In the instant matter, in their motion, Appellants claim that a protective order was necessary because the documents included trade secrets, namely:

> developmental research [which contains] detailed information as to [Appellants'] techniques and methodologies, so if the [s]tandard [o]perating [p]rocedures are not protected, a competitor could readily compare its procedures with those of [Appellants] and identify those areas needing particular attention to gain improved performance, eliminating its own expenditures associated with the evaluation and development of such policies and procedures. . . .

(Appellants' Motion for Entry of a Protective Order, 3/21/16, at 6). The trial court denied Appellants' motion. Firstly, in its decision, the trial court appeared to misunderstand the nature of the Appellants' request, noting that Appellants, "failed to cite to a single medical malpractice action in which a judge sitting in Pennsylvania entered a protective order that protected a defendant's policies and procedures **from production** during discovery." (Trial Ct. Op., at 4) (emphasis added). The court further found that "a critical factor" was Appellants' failure to offer redacted documents or any papers in response to Appellee's discovery request. (*Id.*).

- 10 -

However, on review, we are constrained to conclude that the trial court is mistaken. Here, Appellants were not seeking to prevent the discovery of the documents. Rather, in their motion, Appellants specifically stated, "[Appellants are] not refusing to produce the requested documents. [Appellants are] asking only that [their] legitimate business interest in protecting [their] [s]tandard [o]perating [p]rocedures . . . from **broad dissemination** requires entry of a protective order." (Appellants' Motion for Entry of a Protective Order, 3/21/16, at 4-5) (emphasis added). At both the hearing on Appellee's motion to compel and the hearing on the motion for a protective order, Appellants reiterated that they had no objection to producing the documents. (*See* N.T. Motion to Compel Hearing, 3/16/16, at 11, 20-21; N.T. Motion for a Protective Order Hearing, 6/08/16, at 10-13, 15). They also stated they had no objection to its use in the litigation and its dissemination to the parties and any expert witnesses, but only wished to protect it from dissemination to the public and their competitors. (*See* N.T. Motion to Compel Hearing, at 11, 20-21; *see* N.T. Motion for a Protective Order Hearing, at 10-13, 15). Therefore, it is evident that Appellants sought only to protect the dissemination of the documents to the broader public, not to prevent Appellee's discovery of the documents and their use in the instant matter. Thus, the trial court's analysis of whether or not the documents are discoverable is not germane to the issue of whether a protective order

should issue, or whether the circumstances justify such a measure to protect against dissemination of confidential material.

We note that, in its opinion, the trial court did hold that the material in question was not a trade secret. (*See* Trial Ct. Op., at 4). However, its brief discussion of the issue appears to be inextricably entwined with its mistaken belief that Appellants sought protection from production during discovery, rather than protection from disclosure to the public. (*See id.*). Further, in making its ruling, while invoking the correct standard of review, the trial court did not discuss any of the evidence provided by Appellants and did not discuss, in specific detail, how Appellants failed to meet that standard.[2] (*See id.* at 3-4).

Our Court has defined a trade secret as, "any formula, pattern, device or compilation of information which is used in one's business, and which gives [it] an opportunity to obtain an advantage over competitors who do not know or use it." *Crum*, *supra* at 585 (citation omitted). We have held

---

[2] We are sympathetic to the difficulties faced by the trial court in this matter. Appellants' failure to submit the documents in question for review by the trial court and their refusal to provide specific information regarding the information contained within them, clearly hampered the proceedings below and made review by this Court exceedingly complicated. However, we believe, as discussed *infra*, that the affidavits submitted by Appellants' employees provided sufficient information to meet the standard for finding that the documents constituted a trade secret.

that the following factors should be considered in determining whether information is a trade secret:

> 1) the extent to which the information is known outside of [the] business; 2) the extent to which it is known by employees and others involved in [the] business; 3) the extent of measures taken by [it] to guard the secrecy of the information; 4) the value of the information to [it] and to [its] competitors; 5) the amount of effort or money expended by [it] in developing the information; and 6) the ease or difficulty with which the information could be properly acquired or duplicated by others. The crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner.

*Id.* (citations and quotation marks omitted).

Here, Appellants submitted affidavits from Leslie Kennedy, the quality assurance manager for Quest Diagnostic Clinical Laboratories, Inc., and from Dr. Harvey Ronald Kennedy, M.D., the senior medical director for national medical quality at Quest Diagnostics. (*See* Affidavit in Support of Protective Order, 3/17/16, at unnumbered page 1; Second Affidavit in Support of Protective Order, 6/17/16, at unnumbered page 1). We have reviewed these documents with the above-stated factors in minds. Appellants do not make the documents in question available to the public and they are only disseminated to a limited number of Appellants' employees. (*See* Affidavit in Support of Protective Order, at unnumbered page 3; *see* Second Affidavit in Support of Protective Order, at unnumbered page 3). In order to guard the secrecy of the information contained within the documents, employees must sign confidentiality agreements and any breach of that confidentiality

subjects the employee to disciplinary action up to and including discharge and potential legal liability. (*See* Affidavit in Support of Protective Order, at unnumbered pages 3-4). Appellants contend that the information has great value to its competitors because the standard operating procedures are based on years of compilation of nationwide research, data and statistics, leading to a higher quality of testing than their competitors. (*See* Affidavit in Support of Protective Order, at unnumbered pages 4-5; *see* Second Affidavit in Support of Protective Order, at unnumbered pages 2-3). Further, Appellants contend that they invested substantial monies in gathering this data, which Appellants review annually, and writing new or revised procedures expends many hours of labor. (*See* Affidavit in Support of Protective Order, at unnumbered pages 4-5). For these reasons, this information would be of substantial value to Appellants' competitors.

Thus, in sum, the evidence provided by Appellants shows that the standard operating procedures are based on statistics, data, and information, which indicates their value to them and that the information could disadvantage them if disseminated to the public. Clearly, Appellants have taken many measures to safeguard the standard operating procedures and closely held the information contained therein. Given this, we hold that the trial court erred in determining that Appellants had not shown that the documents in question were a trade secret. *See Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 871-72 (Pa. Super. 2002), *appeal*

*denied*, 820 A.2d 705 (Pa. 2003) (holding that trial court erred in denying protective order and finding documents did not contain trade secrets for one hundred eight documents in medical malpractice case including HMO's procedures for its physicians, where HMO guarded confidentiality of documents, expended funds developing information, and dissemination could create competitive disadvantage).

Therefore, for the reasons discussed above, we vacate those portions of the June 29, 2016 order denying the motion of Appellants for a protective order. The case is remanded to the trial court for entry of an order of confidentiality to prevent dissemination of the information at issue.

Order vacated in part. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2017

- 15 -