J-A24019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID SARTAIN, II, ADMINISTRATOR OF THE ESTATE OF MARY E. RIEKER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| UNITED SERVICES AUTOMOBILE ASSOCIATION | : | No. 4 WDA 2020 |
| Appellant | : | |

Appeal from the Judgment Entered December 2, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2003 GN 4152

| | | |
|---|---|---|
| DAVID SARTAIN II, ADMINISTRATOR OF THE ESTATE OF MARY E. RIEKER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | No. 5 WDA 2020 |
| UNITED SERVICES AUTOMOBILE ASSOCIATION | : | |

Appeal from the Judgment Entered December 2, 2019
In the Court of Common Pleas of Blair County Civil Division at No(s):
2003 GN 4152

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED FEBRUARY 04, 2021**

United Services Automobile Association ("USAA") appeals from the judgment entered in favor of David Sartain II, the administrator of the estate of the late Mary E. Rieker, in Sartain's action for bad faith. USAA challenges

the sufficiency and weight of the evidence and the trial court's grant of Sartain's motion for a protective order. Sartain cross-appeals, asserting the trial court abused its discretion in refusing to award punitive damages. We affirm.

The instant bad faith action arose from USAA's handling of Rieker's underlying claim for underinsured motorist benefits ("UIM"). The facts are as follows.[1] On July 4, 2000, Rieker was driving down a hill on Logan Boulevard when she struck the rear of a vehicle driven by Michael Taylor. Taylor had pulled onto a grassy area to await the start of fireworks, and had just backed onto the roadway when Rieker struck him from behind. Rieker sustained injuries to her neck and back and she required psychological treatment, medication, physical therapy, and multiple surgeries. She also missed periods of work. Rieker obtained liability benefits from Taylor's insurer, Nationwide, which in 2001 paid Rieker the policy limit of $50,000.

Rieker's vehicle was insured by USAA Casualty Insurance Company ("CIC"), which is a subsidiary of USAA. A CIC adjuster interviewed Rieker and Taylor a few days after the accident, on July 6 and 7, 2000, respectively. CIC concluded that Taylor was at fault for the collision. In a letter to Taylor, CIC stated that an independent witness had confirmed that Taylor had backed onto the roadway in front of Rieker's vehicle, and that the police had cited Taylor

_____

[1] We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. **Berg v. Nationwide Mut. Ins. Co., Inc.**, 235 A.3d 1223, 1228 (Pa. 2020).

for limitations on backing. CIC paid Rieker her UIM policy limit of $100,000 in 2002.

Then, in February 2003, Rieker sought UIM benefits under her mother's USAA policy, which had a UIM limit of $600,000. CIC's claims adjustors also handle claims for USAA, and USAA had access to CIC's investigation into the crash. USAA valued Rieker's injuries at $200,000, and in March 2003, offered Rieker $50,000, the balance after considering the $150,000 she had already obtained from the Nationwide and CIC policies.

In October 2003, Rieker commenced the instant bad faith action against USAA. The parties stipulated that Rieker would withhold filing a complaint until the underlying UIM claim was resolved. In the meantime, USAA paid Rieker $50,000, as an undisputed amount due.

Approximately a month later, in November 2003, a psychologist, Dr. Catherine Spayd, diagnosed Rieker with post-traumatic stress disorder ("PTSD") attributable to the 2000 accident. Rieker continued to undergo treatment for her physical and psychological injuries and was unable to work. She provided records of her diagnoses and expenses to USAA. USAA sent a letter to Rieker in April 2004, stating that because it had not received Dr. Spayd's report – which it had, in fact, already received – it "must assume this psychological component of [Rieker's] problems is not related to the accident." Letter from USAA, 4/27/04. The letter stated USAA would continue to value the claim at $200,000, and that it was initiating arbitration.

USAA retained Louis Schmitt, Esquire, as outside counsel for the arbitration. USAA told Attorney Schmitt in a May 2004 letter that its investigation was complete and that it had found Taylor wholly liable, and Rieker not liable. However, Attorney Schmitt responded in November 2004 that, after speaking with Taylor, his position was that Rieker was at fault for the accident. He stated he had spoken with Taylor by telephone and Taylor had said that he estimated Rieker's speed before the crash to be 70 mph. Attorney Schmitt stated that Taylor reported that he was stopped when Rieker hit him and that Rieker left 70 feet of skid marks on the road. Attorney Schmitt said Taylor told him that he had conducted a personal experiment and was unable to recreate 70 feet of skid marks, even when traveling faster than 40 miles per hour, the speed Rieker had claimed to have been driving. Attorney Schmitt advised USAA that he believed an arbitrator might find Taylor's version of events credible, in light of a police report also stating that Rieker's vehicle had left 70 feet of skid marks. USAA never had an expert, such as an accident reconstruction expert, conduct an analysis to determine Rieker's speed.

USAA responded to Attorney Schmitt in December 2004, agreeing that Rieker may have had some degree of comparative negligence, although perhaps not more than 50%. But, by 2005, USAA had taken the position that Rieker was wholly liable.

Shortly before arbitration was to begin, in January 2005, USAA filed a declaratory judgment action regarding Rieker's ability to claim damages in

excess of the policy's UIM limit or argue bad faith during the UIM arbitration. Arbitration was stayed while the action was pending. The trial court dismissed the declaratory judgment action on preliminary objections. It concluded that the amount of damages was for the arbitrator and that Rieker had not submitted a bad faith claim for the UIM arbitration. USAA later further delayed arbitration by requesting evidence of Rieker's subsequent motor vehicle accidents, fall-downs, alcoholism, and depression.

Rieker's UIM claim finally went to arbitration in 2013, and the arbitrator found for Rieker. The arbitrator found that Rieker had not committed comparative negligence, valued her injuries at $598,888.33, and awarded her $398,888.33, the balance after the $200,000 she had already received.

With the UIM claim finally resolved, the bad faith action resumed and in October 2013, Rieker filed a complaint. Rieker passed away in August 2014. Sartain is her son, and, as administrator of her estate, replaced her as plaintiff.

USAA served a "First Request for Admissions" on Sartain. Sartain moved for a protective order. The court granted the motion in part, and ruled Sartain would not have to respond to USAA's request for admissions regarding Rieker's "post-denial" conduct — that is, anything Rieker did after USAA's April 2004 initiation of arbitration, which the court treated as the "denial" of Rieker's UIM claim. The court concluded that Rieker's conduct after USAA commenced arbitration was not relevant to whether USAA had acted in bad faith in denying the claim. Opinion and Order, 2/22/16, at 7.

The bad faith case went to a bench trial in 2018. Sartain called a USAA representative, Scott Myers, as the sole witness in plaintiff's case, and examined him as if on cross. USAA also called Myers as a witness, as well as Attorney Schmitt.

Sartain contended that USAA had acted in bad faith by changing its position on Rieker's negligence based solely on Attorney Schmitt's assessment of Taylor's credibility. Sartain argued USAA should have realized that Taylor was not credible because some of his statements contradicted his 2000 interview with CIC, to which USAA had access. Sartain also argued USAA had acted in bad faith by refusing to consider Rieker's ongoing need for psychological treatment, and by failing to investigate the accident fully by interviewing the investigating law enforcement officer before the arbitration hearing or hiring an accident reconstruction expert. Sartain further maintained that USAA had prolonged the UIM proceedings in order to reevaluate the claim selectively, after learning of Rieker's substance abuse and falls subsequent to the 2000 accident.

USAA responded that it relied on Attorney Schmitt's advice in taking the position that Rieker was negligent, based on Attorney Schmitt's 2004 interview with Taylor. It further argued that it had fully investigated the accident, including through its access to the records of CIC's investigation, and that it had never intended to stall the UIM proceedings by filing the declaratory judgment action or seeking information to clarify the damages attributable to the 2000 accident.

The court found USAA had acted recklessly and without a reasonable basis in continually valuing Rieker's claim at $200,000. Trial Court Op. at 11, 18. The court found that USAA had improperly failed to reevaluate the claim to consider Rieker's psychological damages. The court pointed out that USAA told Rieker it would not consider her claim for psychological injuries because Rieker had not provided documentation of her PTSD diagnosis, when USAA admitted at trial that it had received the medical records. *Id.* at 13-14, 16.

Next, the court considered USAA's change of position on liability. The court noted that as of March 2003, USAA had not found any negligence on the part of Rieker, and that USAA sent correspondence to its counsel in May 2004, stating that its investigation was complete and that it deemed Taylor wholly liable. However, counsel responded in November 2004 that, after speaking with Taylor, his position was that Rieker was at fault. USAA responded in December 2004, agreeing that Rieker may have had some degree of comparative negligence, although perhaps not more than 50%. By March 2005, USAA had changed position to claim that Rieker was wholly liable.

The court noted that although USAA had relied on its counsel's advice that if the arbitrator found Taylor to be credible, USAA could prove Rieker was at fault, the arbitrator had found Taylor "was neither consistent, nor credible." *Id.* at 17. The trial court stated that although the arbitrator's decision did not bind it, it recognized that the arbitrator was a "neutral, detached fact-finder" and had not found Rieker comparatively negligent at all. *Id.* at 12.The court added that, in awarding Rieker nearly $600,000, the arbitrator had

determined that Rieker had suffered substantial injuries. *Id.* The court concluded that USAA's change of position on liability "represents a significant failure by [USAA] in their ongoing responsibility to investigate and reconsider [its] position during [its] entire management of the claim." *Id.* at 15.

The court found that USAA's refusal to assign Rieker's claim a higher valuation "was done with a purpose motivated by self-interest." *Id.* at 16. The court pointed out that although USAA had in its possession documentation of Rieker's psychological damages, it failed to take that evidence into account. The court further concluded that USAA had failed to perform appropriate investigation and follow-up. It noted that USAA did not contact the investigating law enforcement officer until the arbitration hearing, or hire a reconstruction expert. The court also found that USAA prolonged the UIM proceedings by filing a declaratory judgment action in order to reevaluate the claim selectively in light of Rieker's substance abuse and subsequent falls.

As damages, the court awarded Sartain $24,650 in attorneys' fees in connection with the instant case, $125,000 for attorneys' fees in connection with the underlying UIM claim, and $125,000 in accrued interest. The court denied Sartain's claim for punitive damages. USAA filed a post-trial motion for judgment notwithstanding the verdict and a new trial, and Sartain filed a post-trial motion arguing the denial of punitive damages was against the weight of the evidence. The court denied both motions.

The parties filed cross-appeals, which we have consolidated. USAA raises the following issues:

1. Whether the trial court erred or abused its discretion in denying USAA's motion for JNOV and a new trial where the verdict was not supported by sufficient evidence insofar as [Sartain] failed to prove by clear and convincing evidence that [USAA] acted in bad faith and where the trial court's findings of fact and conclusions of law are otherwise against the weight of the evidence[.]

2. Whether the trial court erred or abused its discretion in granting in part [Sartain]'s motion for protective order on the basis that [USAA]'s request for admissions sought admissions regarding the insured's "post-denial" conduct.

USAA's Br. at 7. Sartain raises a third issue:

3. Based upon the evidence supporting the finding of bad [faith] was the trial court's denial of punitive damages an error of law and/or abuse of discretion such that it shocks one's sense of justice?

Sartain's Br. at 2.

## I. Bad Faith

USAA makes three arguments that the evidence does not support the trial court's determination that its handling of Rieker's UIM claim amounted to bad faith. It maintains that when viewed in the context of "all the facts and circumstances," its handling of her claim was "not so unreasonable" as to amount to bad faith as a matter of law. USAA's Br. at 9.

It first argues that the record does not support the conclusion that it acted in bad faith by failing to investigate the accident properly. USAA points out that, according to its witnesses, it did not interview the responding police officer until the arbitration hearing because he did not observe the accident and his findings were in the police report, which USAA did review. USAA also maintains that it had the CIC adjuster's interviews of Rieker and Taylor from

a few days after the accident. *See id.* at 13, 16.[2] USAA states that it was unable to hire a reconstruction expert by the time of arbitration because too much time had passed and there were no photographs of the accident scene. USAA contends that its investigation was at most negligent, which is insufficient to prove bad faith.

Second, USAA argues the evidence does not support the conclusion that it acted in bad faith by changing its position on liability, by first finding that Rieker was not at fault and then deciding that she was. USAA argues it changed its position on the advice of counsel, whom it did not retain for the UIM case until 2004. Attorney Schmitt relied on his conversations with Taylor, who was "very adamant that he was not at fault for the accident," and the police report referencing 70 feet of skid marks left by Rieker's vehicle at the collision. *Id.* at 62. Although the arbitrator ultimately did not believe Taylor's testimony, the court should not have relied on that fact in concluding that USAA had no reasonable basis for proceeding to arbitration and pursuing a liability defense.

Third, USAA argues the evidence does not support the determination that it acted in bad faith by valuing the claim at $200,000 throughout the dispute. USAA argues that although it stated in a 2004 letter that it would not

_____

[2] USAA's brief elsewhere states that it was USAA that conducted the interviews of Rieker and Taylor. *See* USAA's Br. at 57. It is not clear, but it appears that the CIC adjuster who interviewed Rieker and Taylor also handled claims for USAA and USAA had access to his interviews when evaluating Rieker's UIM claim. *See id.* at 16.

consider any psychological damages because USAA had not received the related records, that letter was sent in error, and does not prove that USAA disregarded psychological damages during the entire pendency of the UIM claim. USAA argues that its valuation was reasonable considering that Rieker's treatments after 2006 were due to subsequent motor vehicle accidents. USAA further argues that it was entitled to base its valuation on its determination of liability. USAA contends that it reduced the value of the claim "by the potential comparative negligence of the insured." USAA's Reply Br. at 28. USAA argues that even if it undervalued the claim, there was no clear and convincing evidence that it did so out of ill will, or without reasonable basis.

Our standard of review of the trial court's verdict is as follows.

Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Mohney v. Am. Gen. Life Ins. Co.*, 116 A.3d 1123, 1130 (Pa.Super. 2015) (quoting *Hollock v. Erie Insurance Exchange*, 842 A.2d 409, 413-14 (Pa.Super. 2004) (*en banc*)). Ultimately, "[w]hen an insured obtains a bad faith verdict in a bench trial, appellate courts should only reverse in the most

egregious of cases when the trial court has committed reversible error." ***Berg***, 235 A.3d at 1229.

"The analysis of an insurance bad faith claim 'is dependent on the conduct of the insurer, not its insured.'" ***Mohney***, 116 A.3d at 1138 (quoting ***Rhodes v. USAA Cas. Ins. Co.***, 21 A.3d 1253, 1261 (Pa.Super. 2011)). Because "bad faith" in this context stems from the duty of good faith and fair dealing implied in every insurance contract, the plaintiff need not prove the insurer acted with self-interest or ill-will. ***Berg***, 235 A.3d at 1232. In order to prevail under the bad faith statute, 42 Pa.C.S.A. § 8371,[3] "the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." ***Rancosky v. Washington Nat'l Ins. Co.***, 170 A.3d 364, 365 (Pa. 2017).

An action for bad faith is not restricted to the outright denial of a claim, but rather encompasses "all instances of bad faith conduct by an insurer."

_____

[3] The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

*Rancosky v. Washington Nat. Ins. Co.*, 130 A.3d 79, at 94 (Pa.Super. 2015) (quoting *Hollock*, 842 A.2d at 415). This includes a lack of good faith investigation, as well as "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* at 94. An insurer must make a timely investigation in response to the claim, and not just for arbitration. *See Grossi v. Travelers Pers. Ins. Co.*, 79 A.3d 1141, 1154 (Pa.Super. 2013). Indeed, an insurer must reevaluate a claim when presented with new information. *See Rancosky*, 130 A.3d at 96-97 (citing *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1145 (Pa.Super. 2006), and *Hollock*, 842 A.2d at 413).

An insurer's mere negligence does not constitute bad faith, and an insurer may make a low estimate of an insured's claim, so long as it has a reasonable basis. *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa.Super. 2004). However, an insurer has committed bad faith where it "acted in a dilatory manner, and forced the insured into arbitration by presenting an arbitrary 'low-ball' offer which bore no reasonable relationship to the insured's reasonable medical expenses," particularly where the "low-ball" offer proved to be significantly lower than the arbitration award. *Id.* (citing *Hollock*, 842 A.2d 409).

The evidence here supports the trial court's findings of fact and we find no error of law. USAA never changed its valuation of Rieker's claim during the ten years between Rieker's submission of her UIM claim to USAA and the

arbitration, despite mounting evidence that Rieker's damages surpassed $200,000. Although USAA argues that it did so because it found Rieker to be partially, and then wholly, at fault, the evidence does not show that its valuation of the claim hinged on Rieker's alleged comparative negligence.

Certainly, an insurer may reduce its valuation of a claim in proportion to what it considers to be the insured's comparative liability, so long as it has a reasonable basis for doing so. **See Terletsky v. Prudential Prop. & Cas. Ins. Co.**, 649 A.2d 680, 689 (Pa.Super. 1994) (affirming trial court's finding that insurer had reasonable basis for offering 50 percent of the value of the claim where insurer had reasonable basis for assessing probable liability at 50 percent). Here, however, the evidence shows that as USAA's position on liability evolved, its valuation of the claim did not change. Rather, it put a $200,000 value on Rieker's claim from the outset, failed to consider evidence of her psychological damages, refused to modify the valuation, and now cites subsequent developments to justify its failure to adjust the valuation in light of the information it disregarded. That it may not have failed to consider the evidence and adjust the valuation purposefully or because of ill will does not undermine the trial court's conclusion, as Rieker did not need to prove such states of mind. **Berg**, 235 A.3d at 1232.[4]

---

[4] **See also Greene v. United Servs. Auto. Ass'n**, 936 A.2d 1178, 1190–91 (Pa.Super. 2007); **Nordi v. Keystone Health Plan W. Inc.**, 989 A.2d 376, 385 (Pa.Super. 2010).

Moreover, USAA did not change its determination of liability until preparing for arbitration. *See Grossi*, 79 A.3d at 1154. Although its failure to interview the responding police officer might not be sufficient to prove bad faith, standing alone, the trial court merely considered this point as one indication that USAA had not properly investigated the accident. That USAA was unable hire a reconstruction expert for arbitration because too much time had passed is further indicative that it did not make adequate inquiry into the accident in a timely manner. The record supports the trial court's finding that USAA acted in bad faith in its handling of Rieker's claim. *Berg*, 235 A.3d at 1229, 1232.

## II. The Protective Order

USAA argues the trial court abused its discretion in granting Sartain's motion for a protective order. USAA argues the court erred in relying on *Mohney*, as USAA had not sought admissions regarding Rieker's privileged communications with her attorney, or attempted to shift the focus of the case to Rieker's conduct. Rather, USAA argues, it tailored its requests to the allegations of Rieker's Complaint, which spanned the full period from 2000 to 2013. USAA also argues *Mohney* dealt with the admissibility of evidence, not discovery. USAA contends that because of the discovery limitations, USAA could not move for summary judgment, and did not see much of Sartain's evidence until the time of trial.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan*, 894 A.2d

- 15 -

1260, 1268 (Pa. 2006). However, our review of any question of law is plenary. *Id.* An appellant that fails to show prejudice has failed to show an abuse of discretion. ***Commonwealth v. Ogrod***, 839 A.2d 294, 323 (Pa. 2003). A party sustains prejudice in the discovery context when it establishes that there has been "a substantial diminution of [its] ability to properly present its case." ***Stewart v. Rossi***, 681 A.2d 214, 219 (Pa.Super. 1996) (quoting ***McSloy v. Jeanes Hosp.***, 546 A.2d 684, 687 (Pa.Super. 1988)).

USAA has failed to show that the court abused its discretion in granting the protective order. USAA has not specified what evidence it sought under the admissions requests that it did not receive, and how that alleged evidence would have affected its case. USAA does not explain which of Sartain's evidence surprised it at trial, or argue how it would have changed its defense if it had been aware of that evidence sooner. USAA has therefore failed to show how the court abused its discretion in ruling that Sartain did not have to respond to any admissions requests regarding Rieker's post-denial conduct.

### III. Punitive Damages

Sartain argues the court abused its discretion in failing to award punitive damages. According to Sartain, USAA is worth $30 billion, and an award without punitive damages will not have a deterrent effect on such a large company. Sartain claims punitive damages were in order because USAA disregarded overwhelming evidence of Rieker's damages, and did not base its liability theory on any legitimate investigation. Sartain also argues that because USAA delayed the UIM case with a frivolous declaratory judgment

action, Rieker was unable to see the resolution of the bad faith case and improve her quality of life before she died.

"Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." **Hutchison ex rel. Hutchison v. Luddy**, 870 A.2d 766, 770 (Pa. 2005) (citations omitted). Although the bad faith statute allows for punitive damages, "a finding of bad faith does not compel an award of punitive damages," and punitive damages are awarded at the discretion of the trial court. **Hollock**, 842 A.2d at 419.

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Grossi**, 79 A.3d at 1163.

Although the court found USAA acted in bad faith, and awarded attorneys' fees and interest accordingly, we cannot say that it abused its discretion in not awarding punitive damages. The evidence was not such that we conclude that the court's decision was manifestly unreasonable or the result of partiality, prejudice, bias, or ill will. We therefore affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/04/2021